THE STATE OF OHIO, APPELLEE, *v.* PRUETT, APPELLANT.

(No. 876—Decided May 21, 1971.)

*Mr. Everett Burton,* prosecuting attorney, *Mr. Thurl Blume* and *Mr. Ralph Mullins,* for appellees.
*Mr. Franklin T. Gerlach,* for appellant.

GRAY, J. This cause is in this court on appeal from judgments on two verdicts of the jury finding defendant guilty of the offense of robbery and the offense of stealing an automobile.

Defendant, feeling aggrieved at the result of her trial, filed her notice of appeal and assigned the following errors:

"First Assignment of Error. The court erred in refusing indigent defendant-appellant's request for appointed legal counsel to represent her at preindictment preliminary hearing.

"Second Assignment of Error. The court erred in overruling defense motion at conclusion of state's case

and again at conclusion of evidence to dismiss for lack of venue as the state, as a matter of law, had failed to prove beyond a reasonable doubt that the alleged crime had been committed in Scioto County."

A fair statement of the facts surrounding this case is as follows: The complaining witness, John Anderson, lived in Portsmouth. He was sixty-six years of age, retired and received social security income, workmen's compensation for an industrial injury and retirement benefits from his former employer. On June 16, 1970, he visited the Turf Bar in Portsmouth at about 2:30 p. m. to purchase a bottle of beer. He knew one of the bar maids as she was a relative of his. Anderson saw defendant, whom he did not know, sitting in a booth. He asked her if he could buy her a bottle of beer. She acquiesced. He then resumed his seat with the bar maid. Shortly thereafter the bar maid had to leave. Anderson then took a seat in a booth opposite defendant. He ordered her another beer. Clarence Gahan, a defendant in two companion cases to these under review, talked to defendant and then to Anderson and asked Anderson if he would buy him a drink as he was "broke." Anderson bought Gahan a drink. Gahan left. Upon his return, he arranged to have defendant sit in the booth beside Anderson. Gahan then asked Anderson to take him to "the end of the Y" in another part of Portsmouth to pick up his girl friend. At first Anderson demurred but finally agreed. The three, Anderson, Gahan and defendant Pruett, left together to go to Anderson's 1965 Chevrolet Impala located in a nearby parking lot. Anderson opened the door on the driver's side and was getting in to drive. Gahan asked him to let him drive. Anderson agreed. Gahan entered the left side of the car in the front seat. Anderson was placed in the middle and defendant on the right side of the front seat. At that time, Anderson noticed a "blond haired fellow" in the back seat of his car who looked to be twenty six years old and who asked to ride along. Anderson agreed. Anderson had never seen him before.

Gahan drove "straight" to the Shawnee forest and did not stop the car before they arrived there. No one alighted from the vehicle on the way to the forest. Gahan stopped

the car in a "hollow" in the forest and ordered Anderson out of the car. At that moment someone hit Anderson over the left ear. Gahan jerked Anderson out of the car and commenced to hit him. Some one grabbed his arm and took his billfold. Anderson fell down or was thrown down and while prone on the ground someone kicked him. His face and mouth were bleeding. He was dazed. He started to crawl along the road until he was picked up by a passerby. His car was gone, so were his money and his former companions. His car was found later in a vacant lot in Portsmouth.

On June 16th, defendant and Gahan returned to the Turf Bar, arriving in a cab. Later that evening, when Anderson returned to the Turf Bar, he was bleeding. Gahan was seen in the Turf Bar with a "wad" of paper money in his hands.

Defendant contends that Anderson took her to another bar in Portsmouth and left her there and that he then went on about his other business. She further contends that she was never with Anderson in the Shawnee forest on that day. The record shows conclusively that Anderson was found bleeding, beaten and robbed in the Shawnee forest on that day. His car had been taken. Who committed the offenses? The jury found, upon ample and credible evidence, that defendant and Gahan were the offenders. That was the jury's function. Defendant did not see fit to assign an error that the judgment is against the manifest weight of the evidence.

Let us review the record. The offenses were alleged to have been committed June 16, 1970. There was a preliminary hearing June 29, 1970 in the Municipal Court of Portsmouth. On June 22, 1970, the United States Supreme Court announced its decision in *Coleman* v. *Alabama*. 399 U. S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999, wherein it held that under certain circumstances a preliminary hearing was a critical stage in the proceedings and representation by attorneys was required. In the final analysis, all that *Coleman* v. *Alabama, supra,* holds is that the case should be remanded to the state court to determine whether "harmless error" intervened according to the standards set in *Chapman* v. *California*, 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct.

824. Defendant, by affidavit filed April 8, 1971, states that she read about *Coleman, supra,* in the newspapers, immediately recognized her rights, demanded her constitutional right to a lawyer at her preliminary hearing and that such demand was denied. She alleges no specific error and has filed no bill of exceptions. In her brief, she makes the bald statement that if she had had a lawyer at the preliminary hearing she might have been able to ''fashion a vital impeachment tool'' for use at the trial. In truth and in fact, defendant had an opportunity at her trial on the merits before a jury to fashion all ''vital impeachment tools'' that she could find but failed to fashion one impeachment tool, and was found guilty by a jury. To attribute to defendant ten per cent of the legal knowledge ascribed to her in her affidavits would severely tax the credulity of the members of this court. In a week's time, between June 22, 1970, and June 29, 1970, general distribution of the *Coleman* opinion was not had. Lawyers and judges are still debating the extent of application of the holding of *Coleman.* Defendant's attorney in the trial court had much more time to investigate the cases and to determine what trial tactics to employ than her attorney had at the preliminary hearing.

In order to perfect an appeal in Ohio and to bring the matter to the attention of the reviewing court, the objection made in the Municipal Court, with the ruling thereon, must be stated with the facts, or so much of the evidence as is necessary to explain it, and all of the foregoing must be incorporated in the bill of exceptions filed in the case. See R. C. 2321.03 and 2321.05. This procedure was not followed. In fact no bill of exceptions was filed in the case. Ten months later defendant filed some affidavits which were not part of any bill of exceptions and at most were self serving statements.

The Ohio rule requires a contemporaneous objection or motion to the court concerning its ruling and a bill of exceptions or other record of the court thereon in order to lay a foundation for review.

The United States Supreme Court has stated that fed-

eral constitutional rights are not violated when federal questions are not seasonably raised in accordance with the requirements of state law. Noncompliance with local law can thus be an adequate state ground for such a decision by state courts.

Where the affirmance of a state court conviction rests upon adequate ground under state procedure, there is no denial of due process. *Edelman* v. *California,* 344 U. S. 357, 73 S. Ct. 293, 97 L. Ed. 387. *State* v. *Duling,* 21 Ohio St. 2d 13.

Defendant stoutly maintains that venue was not proven. On direct examination, the defendant stated flatly that the offense took place in Scioto county. On cross examination defense counsel succeeded in shaking to some extent this part of defendant's testimony. However, there was ample evidence on this point to go to the jury It resolved the question in favor of the prosecution. Under the facts we are not disposed to disturb that decision.

The record shows that the inception of the crime was at the Turf Bar in the city of Portsmouth. Defendant was taken to the Shawnee forest which lies in Scioto county. There he was beaten, robbed of $120 and his car stolen. Defendant, after the occurrence, returned to the Turf Bar in Portsmouth.

Viewing the record as a whole, in light of the jury verdict of guilty, it appears the jury accepted the facts as claimed by the prosecution. This was their prerogative and the record is ample to sustain such determination. The absence of an assignment of error that the judgment is against the manifest weight of the evidence attests to the sufficiency of the evidence herein.

The defendant had counsel below and did not raise, in the trial court, the failure to appoint counsel at her preliminary hearing in the Municipal Court and, having failed to do so, she is precluded from raising it here. *State* v. *Wallen,* 25 Ohio St. 2d 45. Hence, there is no merit as to the first assignment of error and it is properly overruled.

Neither, by our view, is the second assignment of error well taken. Without reviewing the evidence in detail,

suffice it to say the evidence presented posed a jury question and that the jury resolved it by finding the venue of both crimes to be in Scioto county.

One indictment contains the count of robbery, which is stealing by force or violence or putting in fear. The other indictment contains one count for stealing an automobile.

In this drama, defendant acted the part of the shill. Gahan was the mastermind and the "blond haired fellow" the muscle man, while Anderson played the part of the dupe.

When Gahan left the bar leaving Anderson and defendant together inside, he found the "blond haired fellow" and then placed him in Anderson's car. Thus, the larceny and robbery were set up before Anderson, Gahan and defendant left the Turf Bar.

Conspiracy and common purpose, among two or more persons, to commit crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from defendant's subsequent conduct.

Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.

Defendant left Anderson bleeding, semi-conscious and crawling along a road in a forest. She returned to Portsmouth in Anderson's car without aiding Anderson in any way. The common purpose and conspiracy had inception and the overt act in committing the offenses took place at the Turf Bar when Gahan, Anderson and defendant left it and the final act of both offenses took place when Anderson's car was left by defendant and Gahan in a vacant lot in Portsmouth. Thus, the venue was properly laid in Scioto county.

We find both assignments of error without merit. Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

ABELE, P. J., concurs.
STEPHENSON, J., concurs in the judgment only.