JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Antwain Langford ("Langford"), appeals his convictions and sentences for two counts of aggravated robbery, each with a firearm specification, one count of misdemeanor theft, and one count of felony theft with a firearm specification. Finding merit to the appeal, we reverse.
 {¶ 2} In March 2003, Langford was charged with three counts of aggravated robbery and three counts of theft, each containing firearm specifications. The matter proceeded to a jury trial, where the following evidence was presented.
 {¶ 3} On February 16, 2003, Langford and Johnny Washington ("Washington") were "driving around" in Annette Langford's ("Annette") silver/gray Buick.[1] After purchasing stereo speakers at an appliance store, Washington drove to a BP gas station, which he robbed at gunpoint, taking approximately $300 and a pack of cigars.
 {¶ 4} While Washington was in the BP station, Langford moved into the driver's seat. In his statement to police, Langford claimed that Washington had only the cigars when he returned to the car and Langford maintained that he did not know Washington had robbed the BP station. However, Washington told him to be calm while driving. When asked whether Washington told him that he robbed the BP station, Langford told police, "[N]ot in words but I piece it up by actions. I was barely speeding and he kept telling me to do the limit and he was breathing a little hard." Langford admitted to police that he saw Washington with a "baby gun" earlier that day.
 {¶ 5} On February 23, Washington and Langford drove Annette's Buick to a convenience store, where they purchased cigarettes. Washington drove a few streets away from the convenience store and parked the car. He told Langford that he would be right back and left Langford in the car.
 {¶ 6} When asked what he thought Washington did when he left the car, Langford told police:
"I kind of figure he knew someone or maybe pickup something.But then again I figure at one point in my mind that he was goingto take money (robbing)."
 {¶ 7} As Washington returned to the car, he directed Langford to drive. While driving away, Washington told him that a green car was following them. James Lacey ("Lacey") and Carlos Slade ("Slade") were in the green car attempting to identify who had just robbed a Sunoco station. Lacey testified that two individuals in a silver Buick looked suspicious and the driver was ducking down in the car, although Lacey could not identify either of the individuals. Langford told police that both he and Washington were nervous when the car followed them.
 {¶ 8} Langford told police that Washington did not say anything when he returned to the car, but Langford saw a paper bag sticking out of Washington's pocket. Washington had robbed the Sunoco station at gunpoint, taking approximately $250 from the store and $20 from a customer. On that particular day, Washington gave Langford $20. When police asked Langford if he knew what business Washington robbed this day, Langford responded, "No. I figured it was one of three different businesses."
 {¶ 9} On February 24, Washington and Langford were again driving Annette's Buick. As they turned the corner at a Marathon station, Washington told Langford that they were going to pick up some money from someone. Langford admitted to police that he suspected that a robbery was about to occur. Washington then robbed the Marathon station and took approximately $6,300 in cash. As Washington returned to the car, Langford observed him with a bag. When Washington got into the car, he "floored it" out of the parking lot and drove to an apartment building where Robin Wilson ("Wilson") lived.
 {¶ 10} As Washington left the Marathon station, a neighboring business owner, John Boyton ("Boyton") entered the station and observed Washington exiting, holding a bag. When he found no one inside the station, Boyton called out and Joseph Zigman ("Zigman"), the station manager, and another employee exited a utility room. Boyton and Zigman ran out of the store to locate the robber. Boyton saw Washington enter the driver's seat of a silver Buick and noticed an individual in the passenger seat. Zigman followed the car to an apartment building and called police. He observed two men exit the vehicle and enter the apartment building.
 {¶ 11} Wilson was not in the apartment, but Adarius Haynes was there caring for Wilson's children. Haynes testified that he allowed the two men inside to wait for Wilson. Haynes observed that both Langford and Washington were nervous and pacing, but he testified that Washington was more nervous and kept looking out the window. According to Haynes, Langford played with Wilson's daughter.
 {¶ 12} When the police arrived at the apartment building, Zigman told them that the men were in the upstairs apartment. The police knocked and announced themselves. Haynes testified that Langford attempted to open the door, but Washington directed him not to do so. When the police entered the apartment and ordered everyone on the floor, Washington fled into the bathroom, where he was eventually apprehended. The police recovered the stolen money, a newspaper that was used to cover Washington's face, the jacket Washington was wearing, and a gun. Cash in excess of $200 was recovered from Washington's person, but none was found on Langford.
 {¶ 13} The jury found Langford not guilty of the charges related to the BP station robbery. However, Langford was found guilty of all the remaining charges and was sentenced to nine years in prison. He appeals his convictions and sentence, raising six assignments of error.
 Sufficiency of the Evidence {¶ 14} In his first and second assignments of error, Langford claims that his convictions are not supported by sufficient evidence that he participated in the incidents or that he had the requisite mens rea as the principal offender for the firearm specifications.
 {¶ 15} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 16} Langford was convicted of complicity to commit aggravated robbery and theft, violations under R.C.2923.03(A)(2), 2911.01(A)(1), and 2913.02, related to the robberies of the Sunoco and Marathon stations.
 {¶ 17} Aggravated robbery is defined in R.C. 2911.01(A)(1) as follows:
"(A) No person in attempting or committing a theft offense, asdefined in section 2913.01 of the Revised Code, or in fleeingimmediately after the attempt or offense shall do any of thefollowing:
 Have a deadly weapon on or about the offender's person orunder the offender's control and either display the weapon,brandish it, indicate that the offender possesses it, or use it;* * *."
 {¶ 18} R.C. 2913.02 provides the definition of theft:
"(A) No person, with purpose to deprive the owner of propertyor services, shall knowingly obtain or exert control overeither:
 Without the consent of the owner or person authorized to giveconsent;
 Beyond the scope of the express or implied consent of theowner or person authorized to give consent;
 By deception;
 By threat."
 {¶ 19} Ohio's complicity statute, R.C. 2923.03(A), provides, in pertinent part:
"(A) No person, acting with the kind of culpability requiredfor the commission of an offense, shall do any of the following:
* * *
aid or abet another in committing the offense."
 {¶ 20} In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. State v. Sims (1983), 10 Ohio App.3d 56,460 N.E.2d 672. "The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." State v. Widner (1982),69 Ohio St.2d 267, 269, 431 N.E.2d 1025, 1027. Additionally, even if the accused has knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. State v. Cummings (Apr. 21, 1992), Franklin App. No. 90AP-1144, citing United States v. Head (C.A. 6, 1991),927 F.2d 1361, 1373; State v. Woods (1988), 48 Ohio App.3d 1, 2. A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. State v. Johnson, 93 Ohio St.3d 240, 245-246,2001-Ohio-1336, 754 N.E.2d 796. "Such intent may be inferred from the circumstances surrounding the crime." Id. at 246.
 {¶ 21} Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Cartellone (1981), 3 Ohio App.3d 145,150, 444 N.E.2d 68, citing State v. Pruett (1971),28 Ohio App.2d 29, 34, 273 N.E.2d 884. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. Id. at 150. See State v. Trocodaro
(1973), 36 Ohio App.2d 1, 301 N.E.2d 898.
 {¶ 22} In the instant case, the fact that Langford drove the car after Washington committed the Sunoco robbery is not tantamount to driving a "getaway" car. There was no evidence presented which would indicate that Langford sped away to flee the scene or to assist in the commission of the robbery. Additionally, after Washington robbed the Marathon station, he did not allow Langford to drive. Washington did not "require" Langford's service to drive the car in order to successfully commit each robbery.
 {¶ 23} The record is devoid of any evidence that would implicate Langford in the commission of these robberies beyond mere presence in the vehicle and association with Washington. While Langford may have used poor judgment in accompanying Washington, this poor judgment does not amount to criminal activity. Langford was a bystander, merely along for the ride, and his presence at the scene of the crime or association with the offender is not sufficient to prove that he was an aider and abettor. See Sims, supra. "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." Johnson, supra.
 {¶ 24} Accordingly, the first and second assignments of error are well taken. Having found that there was insufficient evidence to support Langford's convictions, we find the remaining assignments of error to be moot.[2]
Judgment reversed.
It is, therefore, considered that said appellant recover of said appellee the costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J. and Celebrezze, Jr., J. concur.
[1] Annette is Langford's sister and Washington's girlfriend.
[2] The remaining assignments of error involve the jury instructions and evidentiary rulings.