[Cite as *State v. Sekic*, 2011-Ohio-4809.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   95679

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ASIM SEKIC

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART,
## REVERSED IN PART, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-531300

**BEFORE:**   E. Gallagher, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**   September 22, 2011

**ATTORNEY FOR APPELLANT**

Richard Agopian
The Hilliard Building
1415-1419 West Ninth Street
Second Floor
Cleveland, Ohio    44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Brian S. Deckert
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶ 1}  Asim Sekic appeals from his conviction and sentence rendered in the Cuyahoga County Common Pleas Court.  Asim argues that (1) the trial court erred in instructing the jury and in ordering restitution; and (2) the state of Ohio failed to support his conviction with sufficient evidence, and the jury lost its way in convicting him of felonious assault.  For the following

reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**{¶ 2}** This case involves two families who are joined by marriage: the Fords and the Sekics. Andreas Sekic, who is Asim's son, is married to Lisa Sekic (nee Ford). Lisa's mother, Barbara Ford, is married to Lisa's stepfather, Steve "Brance" Ford. Barbara and Steve had one biological child together, Kristopher Ford ("Kris"), who is Lisa's stepbrother. At the beginning of Lisa and Andreas's marriage, the two families got along well. However, relations deteriorated after Kris, an admitted drug abuser, stole Christmas gifts from Lisa and Andreas's children. The families were further estranged after Andreas accused Lisa's mother, Barbara, of stealing clothes while she babysat the children.

**{¶ 3}** These two incidents led to tense relations between the two families, which culminated in the events of November 17, 2009. Both the Fords and the Sekics have widely disparate versions of the events of that night.

**{¶ 4}** According to Andreas Sekic, on that date, he stopped by Drug Mart on his way home from work. As he walked into the store, he observed Kris and Kenneth Ford, Steve's brother, sitting in a car in the parking lot. Andreas later saw Steve inside Drug Mart. Andreas attempted to avoid a

confrontation by lingering in the store, but as he exited, Steve had pulled his vehicle directly behind his, blocking Andreas from leaving the store. Andreas stated that he got into the vehicle and, after Steve pulled away, he left Drug Mart.

{¶ 5} Realizing that he forgot to pick up cigarettes, Andreas stopped at a convenient store, which happened to be located within a two to three minute drive from the Fords' residence. However, Andreas did not exit his vehicle because Steve arrived at that same convenient store, by himself, a short time later. Neither of the men said anything to each other and Steve eventually left the parking lot.

{¶ 6} Andreas testified that he was nervous about seeing the Fords and about their behavior that night, so he called his father Asim. Andreas asked Asim to come and meet him at the convenient store parking lot. Asim obliged and brought his daughter, Vanessa, Andreas's sister, with him. Andreas and Asim spoke about what had occurred that night and Andreas suggested that they go over to the Fords' residence to try and work out their differences. Asim had never met any member of the Ford family, other than Lisa, and Andreas wanted him there as a type of mediator. Vanessa had not met any of the Fords either and she thought they would be able to discuss the upcoming Thanksgiving holiday.

**{¶ 7}** The Sekics arrived at the Fords' apartment and Andreas and Asim walked to a depressed patio with Vanessa following behind. Andreas testified that this was the normal point of entry to the residence. Andreas knocked on the sliding patio door and Kris answered. Almost immediately, according to Andreas, Steve appeared in the doorway and began using profane language, asking who Asim was and ordering both men off of the property. Andreas stated that he and his father never got the chance to talk about their problems with the Fords because Kris and Steve were immediately aggressive. More specifically, Kris and Steve, and later, Kenneth, began approaching Andreas and forcing him to back up on the patio. Andreas testified that Kris attempted to strike him with his elbow and Andreas leaned back to avoid getting hit. As he leaned back, Andreas grabbed a nearby planter and threw it. Andreas admitted that the planter hit Kris in the head but that Kris stayed on his feet and the two began exchanging punches. Andreas stated that he and Kris eventually separated and that he, Asim, and Vanessa left the Fords' property. Andreas stated that his father never hit anyone while they were at the residence and that he never meant to hurt anyone.

**{¶ 8}** Vanessa's testimony was consistent with that of Andreas's and she further testified that Kris bumped Andreas with his chest. Moreover,

medical records support Andreas's testimony that Kris never lost consciousness after being struck with the flower pot.

{¶ 9} In contravention to the facts enunciated above, Kris, Steve, Kenneth, and Barbara Ford testified as follows:

{¶ 10} Kris testified that he, Steve, and Kenneth were leaving the Drug Mart parking lot when they observed Lisa's vehicle, which unbeknownst to the three males, was being driven by Andreas that day. Steve wanted to wait and see if Lisa had any of the children with her so he pulled near the vehicle. However, Andreas appeared and when he observed the Fords, Andreas began jumping and gesticulating wildly and screaming at the Fords inside their vehicle. Steve stated that he waved at Andreas and then pulled out of the parking lot.

{¶ 11} Both Kris and Steve testified that Andreas followed their vehicle as they drove home. Steve reported that he dropped off Kris and Kenneth at the apartment and then drove to a nearby convenient store, where he again saw Andreas. Kris and Steve believed that Andreas was following them and that was why he was at the convenient store. Steve testified they did not go inside the store and simply returned home.

{¶ 12} A short time later, Kris, Kenneth, and Steve heard loud banging on the sliding glass door. Kris testified that as he opened the door, Andreas

said that he wanted to "settle this right now." Kris then claimed that Asim grabbed Andreas and said "hand me the gun." Kris turned to see where the rest of his family was and when he turned back, Andreas threw a flower pot at his head. Kris was knocked unconscious and when he came to, Andreas and Asim were kicking him while he was on the ground. Kris further claimed that Andreas also hit him with a chair from the patio. Kris stated that Andreas and Asim continued to beat him until their sister Vanessa said that she had the gun and that the police had been called.

{¶ 13} Barbara testified to similar facts as Kris, although she claimed that after the attack, her hair hurt, but that she could not remember being hit or grabbed. Barbara also stated that she called the Olmsted Falls Police Department.

{¶ 14} Steve testified that after Andreas hit Kris with the flower pot, both Andreas and Asim came into the apartment, grabbed Kris, and pulled him outside. Steve testified that Andreas and Asim kicked and beat Kris while he lay on the ground and that he observed Asim with a chrome plated gun right before Asim hit him in the face with the gun. Steve further testified that Asim had grabbed Barbara by the hair and threw her inside of the home.

{¶ 15} Kenneth testified in a similar manner as Steve, Barbara, and

Kris. However, Kenneth stated that when Asim entered the apartment, he growled at everyone like a bear. Additionally, Kenneth stated that someone from outside the apartment threw a flower pot filled with rocks, which struck him in the face.

{¶ 16} Olmsted police sergeant, Kimberly Flood, and firefighter/paramedic,Chad Gluss, arrived at the scene. Chad Gluss stated that Kris had lost a lot of blood and that his ear had been ripped away from his head. Based on the statements from the Ford family, Sergeant Kimberly Flood arrested both Andreas and Asim later that night.

{¶ 17} On November 19, 2009, a Cuyahoga County Grand Jury indicted both Andreas and Asim with two counts of felonious assault, one count of aggravated burglary, and two counts of assault. Both Andreas and Asim elected to proceed to trial and their cases were tried jointly. The State presented the following witnesses: Chad Gluss, Kris Ford, Barbara Ford, Steve Ford, Kenneth Ford, and Sgt. Kimberly Flood. In response, Asim presented the following witnesses: Vanessa Sekic, Lisa Sekic, and Andreas Sekic. At the close of the evidence, the jury found Asim guilty of count one, felonious assault, and not guilty of all remaining counts. On July 30, 2010, the court sentenced Asim to two years in prison and ordered him to pay

$14,000 in restitution.[1]

{¶ 18} Asim appeals, raising the five assignments of error contained in the appendix to this opinion.

{¶ 19} In his first assignment of error, Asim argues that the State failed to present sufficient evidence that he aided and abetted Andreas in the commission of felonious assault. In his fourth assignment of error, Asim argues that his conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together.

{¶ 20} The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184.

{¶ 21} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

---

[1]On February 10, 2011, the trial court granted Asim's request for judicial release and placed him on three years of community controlled sanctions. Further, on March 14, 2011, the court held a restitution hearing and, after Kris Ford failed to appear and thus failed to present any evidence of loss, vacated the order of restitution.

reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)

{¶ 22} In evaluating a challenge based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 23} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995. (Internal citation omitted.)

{¶ 24} Based on the trial court's instructions, the jury convicted Asim of complicity to commit felonious assault in violation of R.C. 2923.03(A)(2) and

2903.11(A)(1), related to the victim, Kris Ford.

{¶ 25} Felonious assault is defined by R.C. 2903.11(A)(1) as follows:

"(A) No person shall knowingly do either of the following:

"(1) Cause serious physical harm to another or to another's unborn."

{¶ 26} Ohio's complicity statute, R.C. 2923.03(A), provides, in pertinent

part:

"No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(2) Aid or abet another in committing the offense; * * *."

{¶ 27} As stated by this court in *State v. Langford*, Cuyahoga App. No.

83301, 2004-Ohio-3733:

"In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims* (1983), 10 Ohio App.3d 56, 460 N.E.2d 672. 'The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 431 N.E.2d 1025, 1027. Additionally, even if the accused has knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. *State v. Cummings* (Apr. 21, 1992), Franklin App. No. 90AP-1144, citing *United States v. Head* (C.A.6, 1991), 927 F.2d 1361, 1373; *State v. Woods* (1988), 48 Ohio App.3d 1, 2, 548 N.E.2d 954. A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336, 754 N.E.2d 796. 'Such intent may be inferred from the circumstances surrounding the crime.' Id. at 246, 754 N.E.2d 796.

"Aiding and abetting may be shown by both direct and circumstantial

evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 444 N.E.2d 68, citing *State v. Pruett* (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884. Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. Id. at 150, 273 N.E.2d 884. See *State v. Trocodaro* (1973), 36 Ohio App.2d 1, 301 N.E.2d 898."

{¶ 28} As stated above, the description of the events that occurred on November 17, 2009 were disparate, depending on whether a State's witness or a defense witness provided the description. Nonetheless, viewing the evidence in the light most favorable to the prosecution, as we are required to do, we have no choice but to conclude that the state presented sufficient evidence that Asim aided and abetted in the commission of felonious assault against Kris.

{¶ 29} Specifically, Kris testified that Asim and Andreas appeared at his door that evening and that Andreas hit him with a flower pot, rendering him unconscious. Kris stated that after he regained consciousness, he observed Asim and Andreas kicking him while he was lying on the ground. Barbara and Steve also testified that Asim kicked Kris while he was lying on the ground. More importantly, Kris, Barbara, Steve, and Kenneth all testified that Asim and Andreas acted aggressively and in concert in their attack on Kris.

{¶ 30} While this evidence is not the only version before the finder of

fact, this is the evidence that most supports the state's case. Accordingly, viewing the evidence in the light most favorable to the prosecution, we conclude that the state presented sufficient evidence that Asim supported, assisted, and cooperated with Andreas in the felonious assault of Kris.

{¶ 31} Moreover, we further find that the trier of fact did not lose its way in convicting Asim of felonious assault. Though Asim argues that his version of events should have been relied upon by the jury, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the state, that the state has proven the offenses beyond a reasonable doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶ 32} Asim's first and fourth assignments of error are overruled.

{¶ 33} In his second and third assignments of error, Asim argues the trial court erred in its instruction to the jury. Specifically, in his second assignment of error, Asim argues the trial court erred in providing the jury with an instruction of aiding and abetting felonious assault. In his third assignment of error, he argues the trial court erred in failing to instruct the

jury on self-defense and defense of a family member. Because these assignments of error involve the same legal standard, we shall address them contemporaneously.

**{¶ 34}** A trial court has the discretion to determine whether the evidence adduced at trial was sufficient to require a corresponding jury instruction. *State v. Fulmer*, 117 Ohio St.3d 326, 2008-Ohio-936, 883 N.E.2d 1052. Such a decision will not be disturbed absent a finding that the trial court abused its discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1150. Thus, an appellate court may not substitute its judgment for that of the trial court. Id. at 219. It is with this standard of review in mind that we address Asim's two assignments of error.

## Aiding and Abetting

**{¶ 35}** In this assigned error, Asim argues that because there was no evidence that he aided and abetted Andreas in committing the felonious assault against Kris, the trial court erred in instructing the jury as such. However, in our analysis of Asim's first assignment of error we found that the State presented sufficient evidence to allow the trier of fact to deliberate

the charge. Accordingly, we further find that there was sufficient evidence from which the trial court could correctly charge the jury with aiding and abetting.

<u>Self-Defense and Defense of a Family Member</u>

{¶ 36} In this portion of his appeal, Asim argues the court should have instructed the jury on self-defense and defense of a family member. We disagree.

{¶ 37} A trial court does not need to instruct the jury on self-defense unless the defendant has successfully raised the affirmative defense by introducing "sufficient evidence, which, if believed, would raise a question in the minds of reasonable [triers of fact] concerning the existence of such issue." *State v. Melchior* (1978), 56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus. Evidence is sufficient where there is reasonable doubt of guilt based upon a claim of self-defense. Id. at 20. "If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." Id. Accordingly, if the evidence submitted at trial is believed by the trier of fact, the question is whether that evidence will create reasonable doubt of the defendant's guilt. A trial court does not err in refusing to include a self-defense jury instruction when the

evidence does not support the claim. Id. at 22.

{¶ 38} To establish self-defense at trial, the accused must show by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the disturbance; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm; (3) that his only means of escape from such danger was in the use of such force; and (4) he must not have violated any duty to retreat or avoid the danger. Id. at 20-21.

{¶ 39} In the present case, we agree with the trial court that Asim failed to raise a valid claim of self-defense, although, based on a different standard. The trial court considered the evidence in the light most favorable to the defendant and found that Asim failed to meet, by a preponderance of the evidence, the requirements for a self-defense instruction. However, the standard is not preponderance of the evidence, as used by the trial court, but whether there is sufficient evidence if the evidence is believed. *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, 941 N.E.2d 1265; *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755.

{¶ 40} In this case, we cannot ignore the fact that Asim was at fault in creating the situation that gave rise to the altercation with Kris. It is

uncontroverted that Andreas had an incident with Steve, Kenneth, and Kris Ford at Drug Mart parking lot and later, with Steve at a local convenient store parking lot. Andreas testified that because of these two encounters, he was angry and scared and called his father for help. Andreas suggested that he and Asim go over to the Ford's residence to sort out their issues. Asim agreed. It is equally uncontroverted that at this point, the Ford family members had removed themselves from the scenes where these two incidents had occurred. It was Asim and his son who chose to further stoke the fires and arrive at the Ford residence that evening.

{¶ 41} Even if we were to believe that Asim's motives for approaching the Ford family were pure and that Kris was the main aggressor toward Andreas out on the patio, we cannot ignore that Asim caused the situation resulting in Kris's injuries. The evidence revealed that Kris Ford and his family removed themselves from the hostile environment while Asim and his son chose to further confront the family at their home. Thus, Asim's own actions caused the altercation.

{¶ 42} Given these facts, a self-defense claim is inappropriate. See *State v. Nichols*, Scioto App. No. 01CA2775, 2002-Ohio-415. "Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense. Id., *State v. Vines*

(May 29, 1975), Cuyahoga App. No. 33871; *State v. Sanchez* (Apr. 24, 1986), Cuyahoga App. No. 50566. We therefore agree with the trial court's conclusion that the evidence adduced below did not support a self-defense jury instruction.

{¶ 43} Asim's second and third assignments of error are overruled.

{¶ 44} In his fifth and final assignment of error, Asim argues the trial court erred in ordering him to pay $14,000 in restitution. This assigned error has merit.

{¶ 45} In this portion of Asim's appeal, our standard of review of the trial court's decision is abuse of discretion. *State v. Marbury* (1995), 104 Ohio App.3d 179, 661 N.E.2d 271; *State v. Berman*, Cuyahoga App. No. 79542, 2002-Ohio-1277. In determining restitution, a trial court abuses its discretion if evidence of the actual loss does not support the amount of restitution awarded. *Marbury, Berman*. Pursuant to R.C. 2929.18(A)(1), a court may order restitution to compensate victims of crimes under certain conditions. If the court chooses to impose restitution at sentencing, it must do so in open court at that time, and also hold a hearing on restitution if the offender disputes the amount. Id.

{¶ 46} In the present case, the state represented to the court that Kris owed medical bills of $7,740 to the hospital as well as an approximated

future cost of $6,800 to fix a scar on his forehead related to this incident. Asim disputed this amount of restitution at sentencing. However, rather than hold a hearing as required by R.C. 2929.18(A)(1), the trial court imposed the finite sum of $14,000[2] in restitution and stated that it would allow Asim and Andreas to file opposing briefs.

**{¶ 47}** Asim filed the instant delayed appeal on September 9, 2010. The court's July 30, 2010 final sentencing order contained all the required elements to constitute a final appealable order. More importantly, the order contained a finite sum of restitution. See *State v. Brewer*, Cuyahoga App. No. 94144, 2010-Ohio-5242. Further, there is no statutory authority allowing a trial court to exercise continuing jurisdiction to modify the amount of restitution after sentencing. Id.

**{¶ 48}** Accordingly, we find that the trial court erred by imposing restitution without first holding a hearing as required by R.C. 2929.18(A)(1) to ascertain the amount of loss suffered by the victim. We therefore reverse the order of restitution in the sentencing entry and remand for further

---

[2]While the transcript of the sentencing hearing reflects a restitution order of $14,500, Asim's journal entry at sentencing lists the order of restitution at $14,000. It is a fundamental principle of appellate review that the court speaks only through its journal. *Kaine v. Marion Prison Warden*, 88 Ohio St.3d 454, 2000-Ohio-381, 727 N.E.2d 907; *State v. Ahmed*, Cuyahoga App. No. 88315, 2007-Ohio-2639. Accordingly, we shall refer to the amount as reflected in the court's docket.

proceedings consistent with this opinion.[3]

**{¶ 49}** Asim's fifth assignment of error is sustained.

Judgment affirmed in part, reversed in part, and remanded to the lower court for proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR

---

[3]As noted in footnote one, the trial court did hold a hearing on restitution after the initiation of this appeal and did vacate the award of restitution ordered. Nonetheless, as held above, this court was without jurisdiction to do so. *Brewer*.

## Appendix

**Assignments of Error:**

> "I. The appellant's conviction for felonious assault was not supported by sufficient evidence."

> "II. The trial court erred by instructing on a charge of aiding and abetting felonious assault."

> "III. The trial court erred in failing to instruct on self defense and defense of a family member (other)."

> "IV. Defendant's conviction for felonious assault was against the manifest weight of the evidence."

> "V. It was error to order restitution."