[Cite as *State v. Robinson*, 2011-Ohio-6077.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96463**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ROMEO ROBINSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED; CONVICTIONS VACATED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-544520

**BEFORE:** Jones, J., Celebrezze, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   November 23, 2011

**ATTORNEY FOR APPELLANT**

Richard A. Neff
614 W. Superior Avenue
Suite 1310
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Matthew Waters
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Avenue
Cleveland, Ohio 44113

LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Romeo Robinson, appeals his convictions for aggravated burglary, aggravated robbery, kidnapping, theft, and having weapons while under disability.   For the reasons that follow, we reverse.

Procedural History and Facts

{¶ 2} In 2010, Robinson was charged with aggravated burglary, aggravated robbery, and kidnapping, all with one- and three-year firearm specifications, and one count each of theft and having weapons while under disability. He waived his right to a jury trial and the matter was tried to the bench. The following pertinent evidence was presented at trial.

{¶ 3} On November 1, 2010, the 60-year-old victim, Willie Young, walked to his local check cashing store to cash his disability check. Young lived in a high crime area and would always receive and cash his check on the first day of the month.

{¶ 4} He returned home to his apartment on East 106th Street and called Robinson, to whom he owed $70. Young had known Robinson for a few months, "from the neighborhood," and, on occasion, borrowed money from him. This time, Young testified, he told Robinson he would pay him back when he got his disability check.

{¶ 5} About five to ten minutes after Young called him, Robinson showed up at Young's back door, went in, and walked through the kitchen and dining room into the living room. The two men were standing next to each other joking back and forth. Young gave Robinson $70. A "couple of seconds" after Robinson arrived, Young testified, a man with a blue and white handkerchief over his mouth entered the apartment, holding a gun. He pointed the gun in Young's face and demanded money. Young testified that the gun was so close to his face he could see the bullets in it. According to Young, the man with the gun ignored Robinson during the encounter even though

Robinson was standing next to Young. Young testified that he did not feel free to leave his apartment at the time.

{¶ 6} After Young gave the intruder $250, Robinson left the apartment.[1] Young testified that the gunman left "a couple of seconds" later. Young looked out his window and saw the gunman cut through a field. He did not see where Robinson went. Young called 911, stating two men came into his home and robbed him. He described the two men, saying that one had a gun and the other, "they call him Romeo." When asked by the prosecutor during his direct examination why Young had said that two men robbed him, Young testified that he thought Robinson must be involved because he was the only person who knew he had just cashed his disability check.

{¶ 7} On cross-examination Young admitted he never told the police that he had actually invited Robinson to his apartment. To the 911 dispatcher, Young is heard saying that the two men forced themselves into his apartment. He claimed on cross-examination that he misspoke. The investigating detective confirmed that Young never told her that he had invited Robinson over that day, rather he told her that he owed Robinson money and Robinson came over and walked through his back door. The responding police officer also testified that Young did not tell her that he had invited Robinson over.

{¶ 8} Young saw Robinson the next day at a bus stop. According to Young, Robinson asked him why he had sent the police over to his (Robinson's) house. Young

---

[1] Young testified the $250 was the remainder of his check after he paid his rent and utilities.

testified that he told Robinson it was because Robinson was there when Young got robbed. According to Young, Robinson responded by saying, "I'll try and see if I can get that money back for you," but denied being involved in the incident.

{¶ 9} When police arrested Robinson, he told them that he was a victim himself and had nothing to do with the crime. According to Robinson, he ran out of Young's apartment because he was afraid and while running away, the man with the gun passed him. Robinson told police that he went into a store after seeing the gunman, but admitted he never asked for help or called the police.

{¶ 10} Young admitted he lived in a high crime area and testified that it was not an area to "raise your kids." He was not able to remember a previous conviction he had for state drug offenses, but admitted to being a habitual abuser of alcohol, crack cocaine, and marijuana.

{¶ 11} The trial court convicted Robinson of all counts and attendant specifications. The court found that the kidnapping and theft charges were allied offenses to the aggravated robbery and aggravated burglary, but specifically found that the aggravated robbery and aggravated burglary were not allied offenses of similar import.[2] The court sentenced Robinson to an aggregate sentence of eight years in prison.

{¶ 12} Robinson raises the following assignment of error for our review:

"I. The trial court erred to the prejudice of the defendant-appellant when it

_____

[2] Robinson does not raise the issue of allied offenses on appeal.

returned a verdict of guilty against both the sufficiency and manifest weight of the evidence."

Sufficiency and Manifest Weight of the Evidence

{¶ 13} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court delineated the role of an appellate court presented with a sufficiency of the evidence argument as follows:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * " Id. at paragraph two of the syllabus.

{¶ 14} A manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Brindley*, Franklin App. No. 01AP-926, 2002-Ohio-2425, ¶16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin* (1983),

20 Ohio App.3d 172, 175, 485 N.E.2d 717. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" Id.

{¶ 15} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Cleveland v. Kirkpatrick*, Cuyahoga App. No. 94950, 2011-Ohio-2257, ¶26, citing *State v. Braxton*, Franklin App. No. 04AP-725, 2005-Ohio-2198, ¶15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.

{¶ 16} Robinson argues that the state did not present sufficient evidence to convict him of aggravated burglary or aggravated robbery because (1) Young invited Robinson to his apartment, (2) there was no evidence that Robinson ever had a gun, and (3) there was no evidence tying him to the gunman.

{¶ 17} Robinson was convicted of aggravated burglary, a violation of R.C. 2911.12(A)(2), which provides:

> "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> "* * *
>
> "(2) The offender has a deadly weapon or dangerous ordnance on or about the

offender's person or under the offender's control."

**{¶ 18}** Aggravated robbery under R.C. 2911.01(A)(1) provides that:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

"(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

"* * * ."

**{¶ 19}** Ohio's complicity statute, R.C. 2923.03(A), provides, in pertinent part,

**{¶ 20}** "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense."

**{¶ 21}** The state proceeded on the theory that Robinson aided and abetted the gunman. A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Sekic*, Cuyahoga App. No. 95679, 2011-Ohio-4809, citing *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336, 754 N.E.2d 796. "Such intent may be inferred from the circumstances surrounding the crime." *Johnson* at 246.

**{¶ 22}** "In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense." *State v. Langford*, Cuyahoga App. No. 83301, 2004-Ohio-3733, citing *State v. Sims* (1983), 10 Ohio App.3d 56, 460 N.E.2d 672. The mere presence of the accused at the scene of the crime is not sufficient,

without more, to prove that the accused was an aider and abettor, even if the accused has knowledge of the commission of the crime. *Sekic* at ¶27, citing *State v. Cummings* (Apr. 21, 1992), Franklin App. No. 90AP-1144, and *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 431 N.E.2d 1025. The accused must have had some level of active participation by way of providing assistance or encouragement. *State v. Nievas* (1997), 121 Ohio App.3d 451, 456, 700 N.E.2d 339; *Sims* at 58.

{¶ 23} "Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed." *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 444 N.E.2d 68, citing *State v. Pruett* (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884.

{¶ 24} Viewing the evidence in the light most favorable to the prosecution, as we are required to do, we conclude that the state failed to present sufficient evidence that Robinson aided and abetted in the commission of the crimes against Young. The gunman entered Young's apartment shortly after Robinson arrived, approached Young, and pointed a gun in Young's face, demanding money. When asked what Robinson was doing during this time, Young insisted that he did not know because he was too focused on the gunman. Young's testimony conflicted as to whether Robinson walked or ran out of his apartment, with Young finally testifying that Robinson "hurried" out of the apartment. Young testified that he saw the gunman cut across a field behind his apartment but did not see where Robinson went.

{¶ 25} The record is devoid of any evidence that would implicate Robinson in the commission of the robbery beyond his mere presence in the victim's apartment. There was no evidence presented that Robinson had any association with the gunman, other than Young's testimony that Robinson told him he would try to get his money back. There was no evidence presented that Robinson, as the state argued, helped set Young up for the robbery. Although Young testified no one else knew he was cashing his check that day, he also testified that he had received his disability check for years, received it on the first of the month, and would walk or ride his bike to the check cashing store to cash the check. Therefore, it is more than plausible that anyone who knew or observed Young to any degree would know of this habit.

{¶ 26} Intent may be inferred from relevant circumstantial evidence, so long as such an inference is not based on the mere stacking of inference upon inference. *State v. Cowans* (1999), 87 Ohio St.3d 68, 78, 717 N.E.2d 298. And even though aiding and abetting can be inferred from the circumstances surrounding the crime, in order to find sufficient evidence in this case, this court would have to stack each inference on top of another; even if this court did so, there still would not be enough evidence to sustain Robinson's convictions.

{¶ 27} In *State v. Langford*, Cuyahoga App. No. 83301, 2004-Ohio-3733, this court reversed appellant's convictions finding insufficient evidence that the appellant aided and abetted the principal when the state failed to show more than the appellant's presence in the "getaway" car at the time of the robberies and his association with the

principal actor. Absent more, this court held, the appellant's presence at the scene of the crime or association with the offender was not sufficient to prove that he was an aider and abettor. Id. at ¶23.

{¶ 28} In this case, there was no evidence presented, other than one statement Robinson made at the bus stop, that the gunman and Robinson even knew each other, let alone associated with each other.

{¶ 29} Simply, the state presented absolutely no evidence that Robinson supported, assisted, encouraged, cooperated with, advised, or incited the gunman or shared in his criminal intent. There just was no evidence presented by the state that Robinson was in any way involved in the crime.

{¶ 30} As to the convictions for kidnapping and theft, Young testified that he did not feel free to leave his apartment while the gunman was robbing him and he gave the gunman $250. But since there was no evidence that Robinson aided or abetted the gunman, those convictions cannot stand. Finally, the defense stipulated to Robinson's prior conviction; but that stipulation was not sufficient to sustain his conviction for having weapons while under disability.

{¶ 31} *A* fortiori, the verdicts were also against the manifest weight of the evidence. See *State v. Sims* (1983), 10 Ohio App.3d 56, 460 N.E.2d 672.

{¶ 32} The sole assignment of error is sustained.

{¶ 33} Accordingly, judgment reversed and convictions vacated.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES,   JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR