[Cite as *State v. Jackson*, 2012-Ohio-2196.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97204**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEVON JACKSON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551158

**BEFORE:** Sweeney, P.J., S. Gallagher, J., and Keough, J.

**RELEASED AND JOURNALIZED:** May 17, 2012

**ATTORNEY FOR APPELLANT**

Mary Jo Tipping, Esq.
Marein & Bradley
222 Leader Building
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Edward D. Brydle, Esq.
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶1} Defendant-appellant, Devon Jackson, ("defendant") appeals his convictions for two counts of felonious assault, improper discharge of a firearm into a habitation, having a weapon while under disability and criminal damaging, along with related firearm specifications. For the reasons that follow, the trial court's judgment is affirmed.

{¶2} The indictment charged defendant with committing the above-described offenses on or about February 1, 2011. The majority of defendant's assignments of error allege that the evidence was insufficient to support some or all of the convictions and specifications and that they were also against the manifest weight of the evidence. These errors will be addressed together as they involve the same set of operative facts.

{¶3} ASSIGNMENT OF ERROR I: The evidence was insufficient to support the jury's guilty verdicts.

{¶4} ASSIGNMENT OF ERROR II: The evidence was insufficient to support the one-and three-year firearm specifications attendant to counts 1, 2 and 4 of the indictment.

{¶5} ASSIGNMENT OF ERROR III: The jury's guilty verdicts were against the manifest weight of the evidence.

{¶6} ASSIGNMENT OF ERROR IV: The jury's guilty verdicts relative to the one-and three-year firearm specifications attendant to Counts 1, 2 and 4 of the indictment were against the manifest weight of the evidence.

{¶7} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶8} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.*

{¶9} In this case, it is without dispute that gunshots were fired into the Cleveland home of Marlon and Beverly Simmons in the early morning hours of February 1, 2011. Immediately prior to that time, defendant, who had been living with the Simmons, got into a fight with Marlon. After the shots were fired, Marlon looked outside and saw defendant standing in front of his house with another man.[1] Marlon testified that the two men were together. The unidentified man left while defendant stood there arguing with Marlon.

---

[1] Marlon did not mention this other unidentified man to police immediately following the incident; instead he simply reported that defendant had fired shots into his house.

{¶10} On February 1, 2011, police responded to a 911 call about a man firing gunshots in that area. The suspect was described as a black male, with black clothing, a red hoodie, and a tan coat. Police arrived and found Marlon attempting to enter an apartment complex. Marlon said defendant had fired shots into his home and that he believed defendant was inside the building at his "sister's" apartment. Defendant's "sister" is Dominica Harrell.

{¶11} Although 11 officers responded to and searched the scene, they were unable to find anyone who matched the suspect's description in either Dominica's apartment or the common areas. Beverly Simmons also arrived at the apartment complex and reported that defendant had shot into her home.

{¶12} The police went to the Simmons' home to take photographs and collect evidence. Within an hour, police saw a man in the lot of the apartment complex who "kind of"[2] matched the suspect's description. The man was defendant and he was transferring clothes from a car into a van. Upon learning his identity, police detained defendant. Defendant admitted that the clothes in the bags were his. Officers seized a red sweatshirt that was loose in the vehicle but were unable to identify who it belonged to.

{¶13} Police conducted a gunshot residue test on defendant's hands, which came back negative. However, defendant had said they might find residue on his hands because he was allegedly present when a friend of his had fired a gun.

---

[2] Defendant, a black male, was wearing black boots and pants but did not have on a red hoodie or a beige coat.

**{¶14}** Marlon identified defendant in a cold stand as the person who shot into his home. Defendant was arrested and charged.

**{¶15}** At trial, Marlon clearly expressed his affection for defendant, who he considers his little brother. Marlon did not want defendant to go to jail. Marlon's recall of the February 1, 2011 shooting was poor. Many times, he could not provide details. He did confirm that he had an altercation with defendant in the kitchen that night where Marlon wielded a knife in order to get defendant out. Marlon also did not know who shot into the house but personally believed defendant would not do it. He confirmed that defendant was outside and that they argued after the shooting. While Marlon believed it was the other man who had fired the shots, he also believed that person was with defendant. Marlon explained that he did not cooperate with the follow-up police investigation because "snitches get stitches." He may have told police that defendant was the shooter immediately following the incident but he claimed to have made the accusation out of anger.

**{¶16}** Beverly did not testify at trial.

**{¶17}** The state offered a recorded phone call that defendant made to an unidentified female in March of 2011 while he was in jail. The call was made using a pin number that was assigned to defendant. And, Dominica Harrell testified that she recognized the male voice on the recording as defendant's voice.

**{¶18}** In this call, defendant recounts the series of events that led to his incarceration. He refers to himself as "Von" and Marlon as "Lo." He told the person who

put a knife in his face, "nigga I got 50 in the clip for you — I'll be right back." Defendant said he left and went to "Dominica house." After he arranged a ride from Dominica's boyfriend, defendant says "boom, after everything pop off, I run in the house" and told Dominica and her boyfriend he had to get out of there. He then reportedly "stash[ed] the joint and change[d] his coat." More specifically, defendant gave someone his red polo coat in exchange for a blue one. Defendant returned to Dominica's to get his belongings, where the police apparently did not notice him at first. Then the police drove to the parking lot and put him in the back of the squad car and defendant knew "that shit was over." Defendant's conversation continued to describe how a male called defendant's mother indicating that the detective was calling him. Defendant told his mother that the guy wanted money.

{¶19} The state presented testimony that the phrase "50 in the clip for you — I'll be right back" is usually a direct threat meaning that the person has a weapon and that "they're going to get it."

{¶20} Police did not recover any weapons in connection with the charges in this case. The parties stipulated to the authenticity of the gunshot residue test and defendant's prior felony conviction.

{¶21} At the close of evidence, the trial court denied defendant's motions for acquittal, and the jury found defendant guilty of felonious assault in violation R.C. 2903.11; having a weapon while under disability in violation of R.C. 2923.13; improperly discharging a firearm in violation of R.C. 2923.161, and criminal damaging in violation of

R.C. 2909.06.

**{¶22}** Defendant generally alleges that his convictions were not supported by sufficient evidence because he believes Marlon's testimony established that he did not have a gun and did not shoot at the house or anyone in it. However, Marlon testified that he did not know who fired the shots into the house. He did not see the shots being fired; he only looked outside afterwards and saw defendant standing there. Regardless of whether Marlon believed defendant was capable of shooting into the house or not, Marlon's testimony was that defendant was at least with the person who fired the shots. Shortly after the incident, both Marlon and his mother told police that defendant had fired shots into their house. Marlon identified defendant as the shooter in a cold stand. Neither Marlon nor his mother mentioned any other person being present or involved until trial.

**{¶23}** Defendant asserts that the evidence is inadequate to support convictions on the gun specification but concedes this can be established by circumstantial evidence. Here we have two people stating that defendant fired shots into their home, a bullet hole through the house, and a bullet found inside. Clearly a shot was fired from an operable weapon; a contrary conclusion is illogical. The only question was who fired the shots. There is evidence to suggest that defendant threatened to use a weapon against Marlon by stating, "I got 50 in the clip for you — I'll be right back." There is no dispute that defendant was standing outside the Simmons' house immediately following the gunfire. Marlon and his mother consistently identified defendant as the shooter until Marlon proclaimed his belief that the shooter was another man who was with defendant. Either way, the evidence

supported defendant's convictions on the gun specifications directly or as an accomplice.

{¶24} Defendant's convictions were supported by sufficient evidence and were not against the manifest weight.   Assignments of error 1-4 are overruled.

{¶25} Assignment of Error V: The Trial Court Erred in Instructing the Jury on Aiding and Abetting.

{¶26} Defendant relies upon this court's decision in *State v. Langford*, 8th Dist. No. 83301, 2004-Ohio-3733, to support his contention that the trial court erred by providing an aiding and abetting jury instruction in this case.   In *Langford*, this court reiterated that "mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor."   *Id.* at ¶ 20, quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982).

{¶27} The record reflects that defendant was not merely present at the scene of a crime. Perhaps if Marlon had simply seen defendant outside, without any further involvement, the instruction would be improper, but such was not the case.   Instead, the record details an escalating altercation had been going on between defendant and Marlon just prior to the incident.   Marlon was upset with defendant, who was cussing about Marlon's sister that night.   Defendant and Marlon had been fighting in the kitchen where Marlon pulled a knife. Both men were angry at each other.   Defendant promised to return with a "50 in the clip" for Marlon.   Very soon after, shots were fired into Marlon's house and defendant was seen standing outside.   The unidentified second man with defendant was  never mentioned to anyone until Marlon testified at trial. Even then, Marlon stated

that this man was with defendant; they were talking and acting together.

Accordingly, the trial court did not err by instructing the jury on aiding and abetting.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR