[Cite as *State v. Hayes*, 2014-Ohio-5295.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-2 |
| v. | : | (C.P.C. No. 12CR05-2218) |
| Kywan M. Hayes, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 26, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Todd W. Barstow*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Kywan M. Hayes, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated burglary, aggravated robbery, felonious assault, and kidnapping, following a jury trial. For the reasons that follow, we affirm the trial court judgment.

{¶ 2} On April 23, 2012, appellant, Matthew DeLoach, Ramal Milton, and Ricky Sumling drove to the home of Christopher and Cassidy Good at 7187 Lithopolis Road in Franklin County. Two of the individuals knocked and, upon Mrs. Good opening the door, forced their way into the house. Appellant and the other individual followed. Mrs. Good was pushed to the ground while holding her infant child. The child fell from her arms. A clump of hair was ripped from her head and she was held at gunpoint while the home was ransacked and burgled. Mrs. Good identified appellant as the lookout and the person who

stood by the door and prevented her from leaving.  She also identified him as the intruder who gently picked up the child and handed him to her while the burglary was occurring.  Mr. Good was forced to the ground at gunpoint in the kitchen.  In the midst of this, one of Mr. Good's workers arrived, causing appellant and his companions to run from the house toward DeLoach's car.  Mr. Good ran after them.  Sumling turned and shot Mr. Good in the leg.  Appellant, DeLoach, Milton, and Sumling fled; however, about a mile down the road, they crashed the car.  Upon crashing, appellant separated from his companions and hid in a culvert where he was later found by sheriff deputies.

{¶ 3}  Earlier the same day, the Goods' home had been burglarized in a separate incident.  The Goods did not contact the police at that time because they were growing large amounts of marijuana in their basement.  Sumling testified that appellant came to his home that same morning to smoke marijuana and play video games.  Appellant was present when appellant's cousin, identified as "T," came over and notified Sumling about a tip he had received from a man named "Black" regarding a large amount of marijuana and cash in the Goods' home.  Black claimed to have burglarized the Goods' home that morning.  Sumling testified that he, "T," Black, DeLoach, and Milton decided to go back to the Goods' home and take the marijuana and cash.  He further testified that appellant was part of the planning for the robbery and burglary of the Goods' residence.

{¶ 4}  After being apprehended, appellant was interviewed by Detective Braden of the Madison Township Police Department.  According to Detective Braden, appellant stated that he went to the Goods' home only to purchase marijuana, but not to rob them.  Appellant testified at trial to the same and denied knowing what Sumling, Milton, and DeLoach had planned.  Detective Braden further testified, however, that appellant admitted that he knew there was a "grow operation" in the house and that he was involved in the planning of the burglary.  (Tr. 318, 322-23, 342.)

{¶ 5}  Appellant was charged with one count of aggravated burglary, one count of aggravated robbery, two counts of kidnapping, all felonies of the first degree, and one count of felonious assault, a felony of the second degree.  All counts were accompanied by three-year firearm specifications.  On October 21, 2013, a jury found appellant guilty of all counts and specifications.  On December 2, 2013, the trial court sentenced appellant,

merging the kidnapping counts with the aggravated robbery count. The court ultimately imposed a nine-year prison sentence. Appellant timely filed this appeal.

{¶ 6} Appellant asserts one assignment of error:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED BURGLARY; AGGRAVATED ROBBERY; FELONIOUS ASSAULT AND KIDNAPPING AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds as recognized in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997).

{¶ 8} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387. " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving the conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.,* quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This

authority "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 9}   R.C. 2911.11 defines aggravated burglary and states in part:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit * * * any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

The offense of aggravated robbery is set forth under R.C. 2911.01(A), which states: "No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."  The offense of kidnapping is defined under R.C. 2905.01(A), which provides: "No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony or flight thereafter; (3) To terrorize, or to inflict serious physical harm on the victim or another."

{¶ 10} Felonious assault, as relevant to appellant's conviction, is defined as: "No person shall knowingly * * * (1) Cause serious physical harm to another or to another's unborn [or] (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C.2903.11(A).  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).  "[F]elonious assault under R.C. 2903.11(A), combined with the definition of 'knowingly' found in R.C. 2901.22(B), does not require that a defendant *intended* to cause 'serious physical harm,' but rather, that the defendant acted with an awareness that the

conduct probably would cause such harm." (Emphasis added.) *State v. Smith,* 10th Dist. No. 04AP-726, 2005-Ohio-1765, ¶ 28, citing *State v. Lee,* 10th Dist. No. 97APA12-1629 (Sept. 3, 1998).

{¶ 11} Finally, in addition to the statutory definitions of the offenses charged, we also consider the elements for complicity found in R.C. 2923.03:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> * * *
>
> (2) Aid or abet another in committing the offense[.]

{¶ 12} The Supreme Court of Ohio has stated:

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson,* 93 Ohio St.3d 240 (2001), syllabus.

{¶ 13} In challenging the jury's verdicts, appellant argues generally that the state's witnesses were not credible because they benefited from cooperating with the state. Specifically, appellant challenges the testimony of Christopher and Cassidy Good and Ricky Sumling. At the time of the burglary, the Goods were growing a significant amount of marijuana plants in their home. As a result, they were both indicted on charges of illegal cultivation of marijuana, a felony of the second degree, possession of marijuana and aggravated possession of drugs, both felonies of the third degree. These charges were still pending at the time of appellant's trial. Both Goods testified that they understood that they would not receive anything in regards to their case in exchange for their testimony at appellant's trial. Ricky Sumling was charged with the same offenses as appellant, as well as having a weapon under disability. Sumling testified that, as part of a plea bargain, he would testify truthfully against appellant and his other companions. In exchange, the state would jointly recommend a prison sentence of five years (rather than the possible eleven years) for his plea of guilty to felonious assault.

{¶ 14} Nothing indicates here that the jury lost its way in assessing those considerations. The jury knew the potential personal motivations of the witnesses, and the jury members were free to determine whether the witnesses' testimony was credible in light of their motivations and any consideration they might have received for testifying. *See State v. Rankin,* 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 30 (concluding the jury was free to assess a witness's credibility where the details of the witness's plea agreement were revealed); *see also State v. Jennings,* 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 54-55, *discretionary appeal not allowed,* 125 Ohio St.3d 1416, 2010-Ohio-1893 (deferring to the trier of fact's credibility determinations even though "both witnesses had something personal to gain from their testimony").

{¶ 15} Co-defendant Ricky Sumling testified that appellant was "in on [the] planning" to go to the victims' house and make some quick money. (Tr. 224.) Sumling also testified that initially "[w]asn't no plan because wasn't nobody supposed to be there. Supposed to be just a burglary. Black dude, the dude that came over, told us there was nobody there, we had to go and do it right then and there." (Tr. 224.) Sumling testified that he had the gun with him because he was just "[b]eing cautious and being suspicious of the circumstances." (Tr. 227.) However, once they saw the house, they realized that people were in the house. Then, according to Sumling, they devised a plan to continue with the robbery. (Tr. 230.) Sumling also testified that appellant went searching through the house for money while Sumling held a victim down with a gun. (Tr. 235.) At the conclusion of his direct examination, Sumling reiterated that appellant was in on the planning of the burglary as well as the planning of the robbery. (Tr. 246.)[1]

---

[1] We note as well that, although appellant steadfastly denied knowing that Sumling had planned to burgle the Goods' home, with regards to the manifest-weight analysis, a reasonable inference could be made that he did know based on the following exchange between appellant and the prosecutor on cross-examination (Tr. 461-62):

> Q: So when [the detectives] asked you * * *, and you had no idea this was going to be a robbery when you left the house? Remember that question?
>
> A: Yes.
>
> Q: And your answer was, when I left the house? No. But then when we pulled in next to the house, about ten yards or so, that's when we started talking?
>
> A: Yes.

{¶ 16} Construing this evidence in favor of the state, as we are required to do when considering a challenge to the sufficiency of the evidence, the jury may have logically concluded that appellant participated in the burglary, robbery, and kidnapping at the very least as an accomplice. Furthermore, the jury may have concluded that appellant knowingly supported, assisted, or cooperated with Sumling in the commission of felonious assault by shooting Mr. Good. In consideration of the evidence presented at trial, we conclude there was sufficient evidence to support the verdicts. Furthermore, upon review of the record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice as to warrant reversal of the convictions. Accordingly, we find that appellant's convictions are not against the manifest weight of the evidence.

{¶ 17} With respect to the felonious assault charge, the dissent raises an important issue, and we agree that appellant's "mere presence" at the time of the shooting would not suffice to establish accomplice liability. *See State v. Widner*, 69 Ohio St.2d 267, 269 (1982) ("Appellee contends—and we agree—that the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor."); *State v. Ranson*, 10th Dist. No. 01AP-1049, 2002-Ohio-2398, ¶ 29 ("The mere presence of the accused during the commission of a crime does not necessarily amount to being an accomplice."). We also agree that the evidence does not suggest that appellant actively encouraged, advised, incited, or even assisted with the shooting of Mr. Good. *Compare In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056 (defendant was in a group of individuals who were passing around a gun and was heard to shout "shoot" and "shoot the [expletive]" immediately before shots were fired by an unidentified member of the group).

{¶ 18} We do find, however, that the evidence supports a conclusion that appellant cooperated with Ricky Sumling in *all* of the day's activities, from the planning of the robbery to the flight therefrom, and, therefore, appellant cooperated with the felonious assault as well. Sumling testified that appellant was in on the planning of the burglary and robbery. He also testified that appellant was present when his companions pointed the gun at Mr. Good inside the house during the course of the robbery. Mrs. Good similarly testified that appellant was present during these events. Sumling shot Mr. Good, as he, appellant, and their companions were fleeing the scene. Both Sumling and appellant

testified that Mr. Good was pursuing the group and reaching for appellant just before Sumling fired the shots. (Tr. 236, 410.) After the shooting, appellant proceeded to get into the car with Sumling and their companions. Appellant did not part company with Sumling until after the car crash when Sumling and DeLoach fled on foot in one direction, and appellant and Milton fled on foot in another direction.

{¶ 19} " '[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971). "A common purpose among two people to commit a crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct." *State v. Dortch*, 10th Dist. No. 12AP-125, 2012-Ohio-6196, ¶ 31. In *State v. Ranson*, 10th Dist. No. 01AP-1049, 2002-Ohio-2398,[2] this court considered the issue of accomplice liability under similar circumstances:

> Because the intent of an accused person dwells in his mind, * * * we must examine the surrounding facts and circumstances to determine whether appellant aided or abetted in committing aggravated robbery, robbery, and felonious assault. In this regard, we can determine by his actions that appellant's complicity to attempt to cause physical harm to another, possess a deadly weapon, or inflict or attempt to inflict or threaten to inflict physical harm upon another began at the moment appellant chose to run away from the crime scene with his accomplices. His complicity continued when he chose to enter the getaway vehicle and ride in the passenger seat of the van with his accomplices in an attempt to elude the police. * * * This is not a case in which appellant was merely an innocent passenger in the vehicle. He had a previous connection with the crimes and occupants and was intentionally using the vehicle, and benefitting from the unlawful actions of his accomplices, in order to escape capture by the police. By his conduct, appellant encouraged the crimes and his criminal intent may be inferred from his presence, companionship, and conduct both before and after the break-in at the pharmacy.

*Id.* at ¶ 32.

---

[2] We note that the dissenting judge in the present case also dissented in part from the decision in *Ranson*. *See Ranson* at ¶ 37-61.

{¶ 20} In this case, appellant fled the scene together with Sumling, DeLoach, and Milton. As in *Ranson*, appellant fled toward the same vehicle as his companions, rather than breaking his association by fleeing alone. Further, the evidence demonstrates that Mr. Good was reaching for appellant immediately before he was shot. Thus, appellant directly benefitted from Sumling's action in shooting Mr. Good; otherwise, Mr. Good may have hindered appellant's ability to flee. Moreover, after Mr. Good was shot, appellant continued to flee with Sumling, DeLoach, and Milton until the car crashed. Under the facts presented here, we conclude that appellant had preceding and subsequent connection and involvement with the events and circumstances leading to the commission of the crimes. *See, e.g., State v. Goudlock*, 8th Dist. No. 35172 (Oct. 14, 1976). This is not a case where the jury clearly lost its way and created a manifest miscarriage of justice by convicting appellant of felonious assault as an accomplice. *See Thompkins* at 387.

{¶ 21} Having found that the convictions are supported by sufficient evidence and that they are not against the manifest weight of the evidence, appellant's assignment of error is overruled.

{¶ 22} Based upon the foregoing, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

O'GRADY, J., concurs.
TYACK, J., concurs in part; dissents in part.

TYACK, J., concurring in part and dissenting in part.

{¶ 23} I respectfully dissent.

{¶ 24} I simply find no support in the record for a finding that Kywan Hayes knowingly aided or abetted in the shooting of Christopher Good. The mere presence of Hayes at the time the shooting occurred does not make him an accomplice in the shooting.

{¶ 25} The author of the majority opinion cites the syllabus to *State v. Johnson*, 93 Ohio St.3d 240 (2001), but then does not follow it. Hayes did not support, assist, encourage, cooperate with, advise or incite the shooter to shoot. The shooter, Ricky Sumling, did the shooting with no help or encouragement of Kywan Hayes.

{¶ 26} Under the circumstances, Hayes is not guilty of complicity in felonious assault.  To the extent the majority of this panel affirms the conviction on that charge, I dissent.

_____