[Cite as *State v. LaFollette*, 2019-Ohio-3854.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 19 CA 0010 |
| RICHARD LAFOLLETTE | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Cambridge, Ohio
                              Municipal Court, Case No. 19 CRB 0039

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       September 19, 2019

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

WILLIAM H. FERGUSON                       MARK A. PERLAKY
Cambridge Law Director                    232 W. 3rd Street, Ste. #323
150 Highland Ave., Ste. #2                Dover, Ohio  44622
Cambridge, Ohio  43725

*Hoffman, J.*

{¶1}   Appellant Richard Lafollette appeals the judgment entered by the Cambridge Municipal Court convicting him of complicity to commit a theft offense (R.C. 2923.03) and sentencing him to sixty days in the Guernsey County jail.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   On January 4, 2019, Appellant entered the Family Dollar store in Cambridge, Ohio with Tina Hundley.  Lois Thompson, the assistant manager of the store, noticed the pair because, "being in retail, you just, you know signs to look for."  Tr. 11.

{¶3}   Thompson saw Appellant in the area of the colognes and body sprays. Hundley was in the next aisle.  Thompson observed Appellant take a black, round item off the shelf, walk to housewares, and hand the item to Hundley.  Hundley put the item in her purse.  Based on the location from which Appellant removed the item and the color and shape of the item, Thompson believed it to be AXE body spray.  Thompson was certain Appellant saw Hundley put the item in her purse because he was looking at Hundley at the time.

{¶4}   Appellant and Hundley then picked up a package of cookies, which they paid for at the register.  Appellant held the door open for Hundley as they exited the store. When they attempted to leave the store, the security alarm sounded.  A verbal altercation ensued between Hundley and Thompson.  Thompson left the store to take a picture of the vehicle in which Appellant and Hundley traveled, as well as their license plate number. Upon direction from Hundley, Appellant flipped up the front plate of the vehicle to obscure the number from Thompson.  Thompson said, "[W]ell that is okay, you have a back license

plate." Tr. 15. Thompson then walked around to the back of the vehicle and took a picture of the back license plate.

**{¶5}** Appellant was apprehended by Patrolman Zack Smith of the Cambridge Police Department as he was getting items out of the vehicle. Ptl. Smith noticed the license plate was bent, as if it had been flipped and put back down.

**{¶6}** Appellant was charged as follows in the Cambridge Municipal Court:

> No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: Aid or abet another in committing the offense;
>
> TO WIT: Did flip the front license plate of the vehicle to conceal it from the Family Dollar Manager as Tina Hundley stole items from the Family Dollar.

**{¶7}** The case proceeded to bench trial. In closing argument, Appellant argued the theft offense was complete when Appellant and Hundley passed the point of sale in the store, and any act committed by Appellant regarding the car is not complicity in a theft offense as a matter of law. Appellant was convicted as charged and sentenced to sixty days incarceration in the Guernsey County Jail. It is from the April 2, 2019 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

> THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF COMPLICITY TO COMMIT THEFT, AS SAID FINDING WAS BASED ON

INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶9} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶10} Appellant was convicted of complicity in violation of R.C. 2923.03(A)(2), which provides:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(2) Aid or abet another in committing the offense[.]

**{¶11}** Appellant first argues the only act alleged in the complaint was flipping the license plate. He argues he did not aid or abet Hundley in committing the theft offense by flipping the license plate, as this action was committed after the theft offense was completed. Appellant did not move to dismiss the complaint on the basis it failed to allege an offense, but did raise this claim in closing argument to the court.

**{¶12}** Appellant bases his argument the theft was complete on the testimony of Thompson on cross-examination:

Q: The theft basically is, is done as soon as she exits those, exits that store in your mind, is that right?

A: Well, there is nothing I can do to get the product from her once she gets out that door, correct.

Q: Okay.

A: However, I have to make sure I get a picture of the license plate so they know what the vehicle is, to where they can possibly stop them if an officer is close enough to intercept.

**{¶13}** Tr. 22.

**{¶14}** The testimony of the store clerk is not dispositive of the legal issue of when the crime is complete for purposes of R.C. 2923.03(A)(2).

**{¶15}** In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 460 N.E.2d 672 (1983). "The mere presence of an accused at the scene of the crime is

not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025, 1027 (1982). Additionally, even if the accused has knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. *State v. Cummings*, 10th Dist. Franklin No. 90AP-1144, unreported (Apr. 21, 1992), *citing United States v. Head*, 927 F.2d 1361, 1373 (C.A. 6, 1991); *State v. Woods*, 48 Ohio App.3d 1, 2, 548 N.E.2d 954 (1988). A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336, 754 N.E.2d 796. "Such intent may be inferred from the circumstances surrounding the crime." *Id.* at 246, 754 N.E.2d 796.

**{¶16}** Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68, (1981), *citing State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (1971). Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *Id.* at 150, 273 N.E.2d 884.

**{¶17}** Appellant cites this Court to *State v. Ratkovich,* 7th Dist. Jefferson No. 02-JE-16, which holds:

> Cornell accomplished the theft before reaching appellant's Jeep. "Once a person transports merchandise without payment beyond the checkout points, or in a manner designed to conceal the merchandise, he

has exercised 'control' over the merchandise and can be convicted of shoplifting under R.C. 2913.02(A)(1)." *State v. Tirabasso* (Sept. 22, 2000), 11th Dist. No. 99-G-2235. Cornell testified that he stole the game systems from Circuit City and ran out of the store. (Tr. 98). Thus, Cornell completed the theft, at the latest, when he exited the doors of Circuit City.

Furthermore, appellant was tried on the principal offense of theft. The jury found appellant not guilty of theft. Hence, they too concluded that the theft was completed before Cornell reached appellant's Jeep.

To prove that appellant was guilty of complicity, appellee had to show that she knew Cornell was going to steal from Circuit City when she dropped him off. If she was unaware of Cornell's intention to steal, she could not be convicted of complicity. The only evidence that might suggest that appellant knew Cornell was going to steal anything from Circuit City when she dropped him off was Romonovich's testimony that when she chased Cornell out of the store, he jumped into a Jeep Grand Cherokee, which was waiting in the first parking space with the engine running. (Tr. 114, 118, 121). But even this evidence is tenuous at best. It is a significant jump to conclude that because a mother drops her son off and waits for him to go into a store with the engine running in a close parking space that she knew he was going in to commit a theft.

Cornell gave testimony that he did not tell appellant about his plan to steal from Circuit City. (Tr. 105). Additionally, Officer John Stasiulewicz bolstered Cornell's testimony. Officer Stasiulewicz testified that Cornell

gave him a statement in which he admitted to stealing the game systems and gave him the details surrounding the incident. (Tr. 88-90). Cornell told Officer Stasiulewicz that appellant did not know that he took the game systems until he jumped into the Jeep and told her. (Tr. 89-90, 92). Officer Stasiulewicz said he felt Cornell had no reason to lie to him. (Tr. 90, 93).

Furthermore, Cornell testified that he had to cross two lanes of traffic to exit the store. (Tr. 98-99). Had appellant planned to be Cornell's getaway driver, presumably she would have parked at the entrance. Cornell also testified that when he jumped in the Jeep, he told appellant he just stole something and yelled at her to get him out of there. (Tr. 99). He stated he threw the game systems in the back seat. (Tr. 99). Romonovich testified that she was yelling for Cornell to stop and chased him to the Jeep. (Tr. 115). She stated that the driver saw her. (Tr. 115-16). Brown testified that as soon as Cornell jumped in the Jeep, the driver of the Jeep "yanked it in gear and took off spinning out of there." (Tr. 76). However, the driver was unable to go forward since Brown had blocked her path with his vehicle. (Tr. 76). Brown stated that the driver then threw the Jeep in reverse and took off backwards. (Tr. 76). Brown's companion, Candice Tharp, and Romonovich both testified that appellant was in such a hurry to get out of the parking lot she almost ran Romonovich over. (Tr. 68, 114). Cornell testified that appellant drove him home with the stolen game systems. (Tr. 101-102).

While appellant clearly acted with terrible judgment, she did not support, assist, encourage, cooperate with, advise, or incite Cornell in the

commission of the theft. As we previously stated, Cornell completed the theft when he ran out of the store. And the evidence at trial does not suggest that appellant knew what her son was planning to do when she dropped him off at Circuit City. Appellant's actions would have supported a charge of obstructing justice under R.C. 2921.32(A)(1), which provides that, "[n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, * * * shall * * * [p]rovide the other person * * * with money, transportation, a weapon, a disguise, or other means of avoiding discovery or apprehension." However, appellant was only charged with theft and robbery.

**{¶18}** *Id.* at ¶¶21-26:

**{¶19}** We find the instant case distinguishable from *Ratkovich.* In *Ratkovich,* there was no evidence presented to demonstrate the appellant did any act in cooperation with Cornell in the commission of the theft, nor was there any evidence to demonstrate she knew about the theft prior to its completion. In contrast here, although the action charged as complicity to theft in the complaint in the instant case occurred after completion of the theft offense, there is abundant evidence to demonstrate Appellant was aware of Hundley's theft and participated in the plan to commit the theft offense prior to his action of flipping the license plate.

{¶20} The overt act charged in the complaint in the instant case was flipping the license plate to avoid detection.[1] This action occurred after the theft offense was committed, similar to driving a getaway car. The other evidence presented in the case demonstrates Appellant performed this act in support or assistance of Hundley in committing the theft offense. Thompson testified Appellant came in the store with Hundley, and Thompson observed Appellant take an object from a shelf where the body spray was located, walk to housewares where Hundley was standing, hand Hundley the item, and watch Hundley place it in her purse. She then saw the pair pay for a package of cookies, and leave the store together, with Appellant holding the door for Hundley. At this point the alarm sounded, and when confronted by Thompson about the item in her purse, Hundley engaged in a verbal altercation with Thompson. Appellant and Hundley then walked to their vehicle, and Appellant flipped the license place up as directed by Hundley when Thompson attempted to photograph the plate. His action in flipping the plate was similar to the action taken by a driver of a getaway car, which also occurs after completion of the offense. We find the evidence was sufficient to demonstrate Appellant aided and abetted Hundley in committing a theft offense.

{¶21} Appellant also argues the act of flipping the license plate did not aid or abet Hundley in committing the theft because Thompson was able to photograph the rear license plate. The mere fact Appellant's action was ineffectual does not render it innocent. At the time he flipped the front plate, Thompson could see only the front plate. After the

---

[1] The State did not move to amend the complaint to allege other acts demonstrating complicity in the theft offense. However, while Appellant argued the only act alleged in the complaint occurred after the theft was complete, he does not assign as error on appeal the complaint was insufficient to charge a crime, but only argues the evidence was insufficient to support conviction.

front plate was flipped, she pointed out to Appellant she merely had to walk to the rear of the vehicle to photograph the rear plate.

**{¶22}** Finally, Appellant argues there was insufficient evidence to demonstrate a theft offense occurred, and a reasonable interpretation of the evidence was Appellant flipped the plate to avoid detection due solely to the altercation between Hundley and Thompson. We disagree. Thompson testified she saw Appellant take an item from the shelf in the body spray section of the store, and she saw Hundley put it in her purse. The pair approached the checkout, where Hundley paid only for a package of cookies. As Appellant held the door for Hundley to leave the store, the security alarm sounded. We find the evidence sufficient to demonstrate a theft occurred in the store. From this evidence, the court could infer Appellant flipped the plate to conceal his and Hundley's identities as they fled the scene of the offense.

**{¶23}** We find the judgment of conviction was not against the manifest weight or sufficiency of the evidence.

{¶24} The assignment of error is overruled.   The judgment of the Cambridge Municipal Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Wise, J. concur