[Cite as *State v. Clark*, 2011-Ohio-4109.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95928**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LEROY J. CLARK

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537114

**BEFORE:** Celebrezze, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** August 18, 2011

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio   44113-1901


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Kristin Karkutt
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶ 1}  Appellant, Leroy J. Clark, appeals his convictions for domestic violence, theft, criminal damaging, and aggravated menacing.  After careful review of the record and pertinent law, we affirm appellant's convictions.

{¶ 2}  On May 19, 2010, appellant was indicted and charged with one count of robbery in violation of R.C. 2911.02(A)(3); one count of kidnapping in violation of R.C. 2905.01(A)(2); one count of domestic violence in violation of R.C. 2919.25(A); two counts of theft in violation of R.C. 2913.02(A)(1); one count of criminal damaging or endangering in violation of R.C. 2909.06(A)(1); and one count of aggravated menacing in violation of R.C. 2903.21(A).

{¶ 3} On September 13, 2010, appellant waived his right to a jury trial, and the case proceeded to a bench trial where the following evidence was presented.

{¶ 4} On April 30, 2010, appellant began drinking alcohol with his girlfriend, Latoya Scruggs. Scruggs testified that she and appellant began to argue as they drove to a local store in her vehicle. Scruggs stated that as the argument intensified, appellant threatened to crash the vehicle into a pole. She testified that appellant then became physical and, at one point, took her glasses off her face, crumpled them up, and threw them out the window. Scruggs stated that appellant then took his Black and Mild cigar and stuck it on her neck, burning her. Once the vehicle stopped, Scruggs attempted to jump out, but appellant prevented her from leaving the vehicle by grabbing her by her sweater. Scruggs testified that she eventually broke away from appellant and called the police from a nearby gas station. Scruggs stated that as appellant sped away from the gas station, he threw her cell phone down the sewer, stating, "this is what I think of your phone."

{¶ 5} Officer Jamie Cruz of the Cleveland Police Department testified that he responded to Scruggs's 911 phone call and report of assault. Officer Cruz testified that upon arriving at the scene, he was met by Scruggs and observed a fresh burn mark on her neck. Officer Cruz testified that Scruggs alleged that appellant had assaulted her and prevented her from leaving her

vehicle. Thereafter, Officer Cruz located appellant and took him into custody.

{¶ 6} At trial, appellant testified on his own behalf and denied assaulting Scruggs. Appellant testified that in the midst of the argument with Scruggs, she became enraged and attacked him while he was in the driver's seat of the vehicle. Appellant stated that Scruggs cracked a part of his tooth during the attack. Appellant alleged that the cigar burned Scruggs's neck when she jumped on him and that he was also burned by the cigar as a result of her actions. Additionally, appellant denied having any involvement in the destruction of Scruggs's glasses and indicated that he owned the cell phone involved.

{¶ 7} At the conclusion of the case, appellant was found guilty of domestic violence, theft, criminal damaging, and aggravated menacing. The trial court found him not guilty of all other counts. At sentencing, appellant was sentenced to a one-year term of imprisonment.

### Law and Analysis

{¶ 8} Appellant appeals, raising three assignments of error for review:

{¶ 9} "I. "The state failed to present sufficient evidence to sustain appellant's convictions."

{¶ 10} "II. "Appellant's convictions were against the manifest weight of the evidence."

{¶ 11} "III.   "Appellant's state and federal constitutional rights to confront the witnesses against him were violated when the trial court restricted his ability to explore motive and bias during cross-examination, and the trial court abused its discretion when it limited the impeachment testimony of appellant's witnesses."

## I

{¶ 12} In his first assignment of error, appellant argues that the trial court erred in denying his motion for acquittal.   Appellant contends that the state failed to present sufficient evidence to support his convictions.   We disagree.

{¶ 13} At the conclusion of the state's case, appellant moved for acquittal pursuant to Crim.R. 29, and the motion was denied by the trial court.   A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.   "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.   "[T]he weight to be given the evidence and the credibility of the

witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 14} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.22(B) states that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 15} In this case, Scruggs testified that appellant was the father of her three-year-old child and was living with her in an apartment at the time of the incident. Over the course of the trial, the trial court heard evidence that on April 30, 2010, appellant took his cigar and stuck it on Scruggs's neck in the midst of an argument. This purposeful act by appellant left a noticeable burn mark on the side of Scruggs's neck. The existence of the burn mark was corroborated by the testimony of Officer Cruz, who testified that he observed a fresh burn mark on the side of Scruggs's neck upon arriving at the scene of the altercation. Further, the prosecution presented the trial court with a photograph of Scruggs taken after the altercation that clearly illustrated the extent of her burn and other injuries.

{¶ 16} In light of this evidence, we find that the prosecution presented sufficient evidence to establish the elements of domestic violence beyond a reasonable doubt.

{¶ 17} With respect to appellant's convictions for theft, R.C. 2913.02 provides that, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without consent of the owner or person authorized to give consent." Appellant contends that he owned the cell phone that was the subject of his theft conviction. Therefore, appellant submits the state failed to establish Scruggs's ownership in the cell phone, a necessary element of theft.

{¶ 18} Despite appellant's contentions, we find that the prosecution presented sufficient evidence that the cell phone belonged to Scruggs. The record reflects that Scruggs paid the bills for the cell phone and exercised control over the cell phone at all times. Further, Scruggs testified that when appellant dropped the cell phone into the sewer, he stated, "this is what I think of *your* phone." (Emphasis added.)

{¶ 19} Construing the evidence in a light most favorable to the prosecution, the state's evidence, if believed, is sufficient to convince a reasonable trier of fact, beyond a reasonable doubt, that appellant

permanently deprived Scruggs of her property without her consent or authorization.

{¶ 20} With respect to appellant's conviction for criminal damaging or endangering, R.C. 2909.06 states, "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the person's consent * * * knowingly, by any means."

{¶ 21} Appellant argues that the state failed to present any physical evidence of the alleged broken eye glasses that were the subject of his criminal damaging conviction. At trial, Scruggs testified that, during the parties' argument, appellant "snatched her glasses off her face, crumpled them up, and threw them out the vehicle's window." Scruggs testified that she requires eye glasses to see and that, as a result of appellant's conduct, she was forced to wear new glasses because the destroyed pair of eye glasses were never recovered.

{¶ 22} Viewing Scruggs's testimony in a light most favorable to the prosecution, we find the record contains sufficient evidence that appellant damaged property owned by Scruggs.

{¶ 23} Finally, appellant's conviction for aggravated menacing is governed by R.C. 2903.21, which states, "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a

member of the other person's immediate family." Appellant asserts that Scruggs's testimony reveals that she did not believe he would cause serious physical harm to her with threats he made. At trial, Scruggs testified that during the parties' argument, appellant threatened to crash the vehicle into a pole, and these threats scared her.

{¶ 24} Construing this testimony in a light most favorable to the prosecution, the state's evidence, if believed, is sufficient to convince a reasonable trier of fact, beyond a reasonable doubt, that appellant knowingly caused Scruggs to believe he would cause her serious physical harm. Appellant's first assignment of error is overruled.

**II**

**{¶ 25}** In his second assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. We disagree.

**{¶ 26}** "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25.

{¶ 27} In arguing that his convictions were against the manifest weight of the evidence, appellant maintains that his testimony was more credible than that of Scruggs. However, the determination of weight and credibility of the evidence is for the trier of fact. *State v. Chandler*, Franklin App. No. 05AP-415, 2006-Ohio-2070, ¶9, citing *DeHass*, supra. The rationale behind this well-settled tenet is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *State v. Tinsley*, Cuyahoga App. No. 92339, 2010-Ohio-2083, ¶31; *State v. Williams,* Franklin App. No. 02AP-35, 2002-Ohio-4503. The trier of fact is free to believe or disbelieve all or any of the testimony. *State v. Sheppard* (Oct. 12, 2001), Hamilton App. No. C-000553.

{¶ 28} Consequently, although we act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, we are charged with the task of giving great deference to the fact finder's determination of the witnesses' credibility. *State v. Covington*, Franklin App. No. 02AP-245, 2002-Ohio-7037, ¶22. Upon review of the record, we find no reason to dispute the trial court's determination of witness credibility, and there is no evidence that the trier of fact "lost its way." Appellant's second assignment of error is overruled.

## III

{¶ 29} In his third assignment of error, appellant contends that the trial court committed prejudicial error in limiting the admission of certain testimony, the cumulative effect of which was to deny him a fair trial in violation of his due process rights under the Ohio and United States Constitutions. We disagree.

{¶ 30} We initially address appellant's contention that his state and federal constitutional rights to confront the witnesses against him were violated when the trial court restricted his ability to explore motive and bias during the cross-examination of Scruggs.

{¶ 31} The constitutional right of cross-examination includes the right to impeach a witness's credibility. *State v. Green*, 66 Ohio St.3d 141, 1993-Ohio-26, 609 N.E.2d 1253; *State v. Brewer* (Aug. 24, 1994), Montgomery App. No. 13866; Evid.R. 611(B). Unlike federal Crim.R. 611, which generally limits cross-examination to matters raised during direct, Ohio Crim.R. 611(B) permits cross-examination on all relevant issues and matters relating to credibility. Weissenberger, Ohio Evidence (2005), 245-246. Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility. Evid.R. 616(A); *State v. Ferguson* (1983), 5 Ohio St.3d 160, 450 N.E.2d 265. The denial of full and effective cross-examination of any witness who identifies a defendant as the

perpetrator of the offense is the denial of the fundamental constitutional right of confrontation essential to a fair trial. *State v. Hannah* (1978), 54 Ohio St.2d 84, 374 N.E.2d 1359.

{¶ 32} On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, witness safety, or repetitive, marginally relevant interrogation. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. It is within the trial court's broad discretion to determine whether testimony is relevant and to balance its potential probative value against the danger of unfair prejudice. *In re Fugate* (Sept. 22, 2000), Darke App. No. 1512. The determination as to whether otherwise relevant evidence must be excluded because of a threat of unfair prejudice outweighing its probative value is within the sound discretion of the trial court and will not be overturned on appeal absent a showing of abuse of discretion. *Cleveland v. Petko (*1996), 112 Ohio App.3d 670, 676, 679 N.E.2d 1162. See, also, *State v. Mason*, 82 Ohio St.3d 144, 158, 1998-Ohio-370, 694 N.E.2d 932. An abuse of discretion implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Id.

{¶ 33} In the present case, Scruggs was questioned on cross-examination about whether she had ever assaulted appellant, to which she replied "no." When asked if the appellant had ever called the police on her she replied

"yes"; when asked "why," the state objected and the court sustained, preventing further inquiry.

{¶ 34} Evid.R. 608(B) states, in pertinent part:

{¶ 35} "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

{¶ 36} One commentator has noted that, "[u]nder Rule 608(B), a witness may be impeached on cross-examination by interrogation as to specific prior instances of conduct which are probative of untruthfulness." Weissenberger, Ohio Evidence (2008), 169. Under the rule, "specific acts of untruthful behavior may only be inquired into on cross-examination, and they may not be established by extrinsic evidence." Id. Thus, "if the witness on cross-examination denies the prior untruthful act, the cross-examiner is said to be 'stuck with the answer.'" Id.

**{¶ 37}** However, even assuming that the evidence at issue was admissible, its admissibility is still subject to Evid.R. 403, which states that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. See, e.g., *State v. Buchanan*, Brown App. No. CA2008-04-001, 2009-Ohio-6042, ¶57 ("even if evidence was deemed admissible pursuant to Evid.R. 608[B], it would still have been excluded under Evid.R. 403[A].").

**{¶ 38}** This case presents a classic "he said, she said" credibility contest between Scruggs (the victim) and appellant. Scruggs's testimony is the only evidence that identifies appellant as the perpetrator of these crimes and demonstrates the elements of the offenses with which appellant is charged. Thus, Scruggs's credibility was a crucial issue in establishing appellant's guilt. That said, however, we agree with the trial court that the issues about which appellant wished to question Scruggs had no relevance as to whether, on April 30, 2010, appellant assaulted Scruggs and unlawfully restrained her.

**{¶ 39}** Further, the Ohio Supreme Court has noted that the "rights to confront witnesses and to defend are not absolute and may bow to accommodate other legitimate interests in the criminal process." *Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297. This includes discretion on the part of the trial court in considering the admission

of extrinsic evidence that could "invite a trial within a trial" or lead to "juror confusion." Id. Therefore, testimony concerning Scruggs's prior arguments with appellant would have injected into this case legitimate concerns over harassment of the victim and confusion of the issues, vis-a-vis putting the victim on trial.

{¶ 40} Whatever marginal probative value these areas of inquiry might have had in impeaching Scruggs's truthfulness was far outweighed by the danger of unfair prejudice that could result from inquiry into those areas. Evid.R. 403(A). Under those circumstances, the limits the trial court placed on the scope of cross-examination of the victim, Scruggs, were entirely reasonable and not an abuse of discretion.

{¶ 41} We next consider appellant's contention that the trial court abused its discretion by limiting the use of impeachment testimony during the direct examination of appellant's witnesses, Wayne Allen and Doris Bright. Specifically, appellant attempted to elicit testimony from Allen and Bright regarding their knowledge of Scruggs's violent tendencies toward appellant in the past.

{¶ 42} In support of his argument, appellant relies on Evid.R. 616(A), which provides that a witness may be impeached by extrinsic evidence showing bias, prejudice, interest, or any motive to misrepresent. Specifically, appellant argues that the testimony of both Allen and Bright

"would have been admissible to impeach Ms. Scruggs with regard to her bias, interest, prejudice, and motive to lie and accuse appellant of attacking her when the truth was she had attacked him, as she had done in the past."

{¶ 43} However, the admissibility of testimony under Evid.R. 616(A) is subject to Evid.R. 403. In limiting the introduction of Scruggs's prior acts, the trial court indicated that any testimony relating to prior attacks on appellant were irrelevant to a determination of what occurred on April 30, 2010. Further, the trial court expressed its concerns about conducting a trial within a trial and the possibility of confusing the issues.

{¶ 44} Upon review, we find no abuse of discretion by the trial court in finding that the probative value of the proffered extrinsic evidence was substantially outweighed by the danger of unfair prejudice. Appellant's third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR