[Cite as *State v. Gardner*, 2023-Ohio-307.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111506 |
| v. | : | |
| TIFFANY GARDNER, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-658922-A

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew F. Rogalski and Caroline Nelson, Assistant Prosecuting Attorneys, *for appellee*.

Kelley & Ferraro, L.L.P., and Carl W. Sullivan, *for appellant*.

MICHAEL JOHN RYAN, J.:

**{¶ 1}** Defendant-appellant Tiffany Gardner appeals from her judgment of conviction, which was rendered after a jury trial. After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

**{¶ 2}** In May 2021, Gardner was charged in a seven-count indictment with two counts of aggravated murder, three counts of murder, and one count each of aggravated robbery and felonious assault.

**{¶ 3}** Prior to trial, plaintiff-appellee the state of Ohio dismissed the two counts of aggravated murder and one of the murder counts, all of which included "purposely" as an element of the crimes. The counts that remained for trial were two counts murder, unclassified felonies, one a violation of R.C. 2903.02(A) and the other a violation of R.C. 2903.02(B); aggravated robbery, a felony of the first degree in violation of R.C. 2911.01(A)(3); and felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1).

**{¶ 4}** The charges resulted from the April 14, 2021 fatal beating by two unknown male assailants of the victim, 70-year-old Leonard Craddock. The state's theory of the case was that Gardner was an aider and abettor to the crimes. The following facts were established by the state's witnesses at trial.

**{¶ 5}** On the day of the incident, Gardner was shopping at the Family Dollar on Euclid Avenue in East Cleveland. The store had surveillance cameras that captured some of the ensuing incident.

{¶ 6} Gardner had a see-through plastic pouch with, by her count, $10,000 cash in it. She placed the pouch of cash in the child seat section of a shopping cart. After making her purchases, she retrieved her bags of purchased items but absentmindedly left her pouch of cash in the cart, which she returned to the walkway in front of the store.

{¶ 7} Shortly after Gardner left, Craddock approached the Family Dollar, retrieved the shopping cart used by Gardner, saw the pouch of cash in the cart, and put it in his waistband. Craddock then shopped in the store.

{¶ 8} Meanwhile, Gardner apparently realized that she left her cash and went back into Family Dollar, where she spoke with the store manager. The store manager viewed footage of a security video, on which she saw Craddock put the pouch of cash in his waistband. The manager told Gardner what she saw on the video.

{¶ 9} More video surveillance showed Gardner confront Craddock. Gardner was able to get her pouch of cash back from Craddock. After that confrontation, Craddock began walking across the street toward another store, AutoZone. According to the Family Dollar manager, Gardner was "screaming" and "hollering" as she got in her car and "sped off." A witness testified that he saw Gardner on her cell phone and heard her "ranting" about someone taking her money.

{¶ 10} Gardner drove to the AutoZone, where Craddock was, and video recorded herself confronting Craddock outside of the store. The video shows Gardner exiting her vehicle, approaching Craddock, and repeatedly questioning him

as to why he tried to "rob" her.  During this confrontation, Gardner was hitting Craddock with a wrist wallet.  Craddock apologized to her.  Gardner was yelling profanities at Craddock, including threats such as "b**** I'll f*** your ass up out here, b****."

{¶ 11} Craddock entered the AutoZone and Gardner followed him.  Witnesses inside AutoZone testified that Gardner was "angry," "chasing [Craddock] aggressively," "hitting him on the head" with the wrist wallet and yelling at him about stealing from her.  Meanwhile, according to the witnesses, Craddock was "trying to get away from [Gardner]," and was not fighting back.  One witness described Craddock as "crunched over" as Gardner hit him.  Gardner was heard saying, "[I]f I was a man I would do some real damage."

{¶ 12} The AutoZone employees told both Gardner and Craddock to leave the store.  Gardner initially left, but Craddock remained, as one witness described, "to catch his breath."  Gardner re-entered the store twice.  A witness testified that "[i]t was like she was making sure he was still in the store."  According to the witness, when Gardner came back into the store Craddock would start hyperventilating.

{¶ 13} Outside video surveillance showed a car drive onto the AutoZone parking lot and two men exiting the car.  Gardner walked by the two men and then turned around and started talking to them.  After their conversation, Gardner and the two men went into the AutoZone.  According to one witness in the store, the men referred to Gardner as "auntie" and made a comment about her "yelling and ranting"

about something that was going on.  The witness testified that the men inquired about oil for their car and then left the store.

{¶ 14} The AutoZone witnesses testified that within a few minutes the two men came back into the store with Gardner.  One witness testified that Gardner looked directly at Craddock and then left the store.  The men then went straight to Craddock and repeatedly demanded that he come outside with them.  Craddock refused.  Eventually, the two men "grabbed" and "dragged" Craddock out of the store.

{¶ 15} The witnesses testified that once the two men had Craddock outside, they brutally attacked him.  They described the men as kicking, punching, and stomping Craddock.  One witness testified that "there was no match, it was like [they were] beating a tiny baby."

{¶ 16} After the attack, Craddock attempted to stand but collapsed to the ground.  Emergency personnel were called.  When they arrived, they pronounced Craddock dead at the scene.

{¶ 17} The video surveillance demonstrated that Gardner remained at the scene for 12 minutes, the time it took the two men to confront and attack Craddock.  Gardner left the scene at the same time the two men left.

{¶ 18} An autopsy was performed on Craddock and revealed that he had seven rib fractures, some of which were displaced fractures.  The medical examiner determined that the fractures punctured Craddock's right lung.  As the air built up in Craddock's cavity, it exerted pressure around the lung, making breathing

progressively more difficult.  Further, blood outside of the lung increased the pressure.  The pressure continued to build until Craddock went into shock, lost consciousness, and died.  The medical examiner determined that Craddock's cause of death was blunt force injury, and his manner of death was homicide.

{¶ 19} Gardner was subsequently arrested.  She maintained that she did not know or have any relationship with the two men who beat Craddock.  The state presented some of Gardner's jail calls to dispute her contention.

{¶ 20} During the calls, Gardner stated that an individual she referred to as "Apple Head" better help pay her bond or she was going to "sing like a bird." Gardner learned that "Apple Head" was complaining about paying $5,000 or $10,000 for her bond, to which she responded, "once it hits, it's a million dollars for both of them."  Gardner also stated that she was not going "to do life" for anybody, and if "push come[s] to shove," she would "make sure they pop up."  Further, Gardner was recorded saying that Craddock "caused his own s***, he took s*** from me."

{¶ 21} Law enforcement obtained a buccal swab from Gardner.  They were unable to link Gardner's DNA to Craddock's body or the crime scene.

{¶ 22} The defense did not present any witnesses and at the close of the state's case made a Crim.R. 29 motion for judgment of acquittal.  The trial court denied the motion.  The court instructed the jury, including an instruction on complicity without objection from the defense.

{¶ 23} On the evidence presented, the jury returned a verdict of guilty of one count of murder and guilty of the sole felonious assault count. The jury found Gardner not guilty of the other murder count and not guilty of the sole aggravated robbery count.

{¶ 24} The trial court merged the murder and felonious assault counts for the purpose of sentencing and the state elected to proceed on the murder count. The trial court sentenced Gardner to life with the possibility of parole after 15 years.

{¶ 25} Gardner presents the following assignments of error for our review:

1. Appellant's conviction is not sustained by sufficient evidence.

2. The jury's verdict was against the manifest weight of the evidence.

3. Appellant was unfairly prejudiced by the introduction of improper and irrelevant evidence.

4. Appellant was prejudiced by trial counsel's ineffective assistance of counsel.

**Law and Analysis**

**Evidence Sufficient to Support Conviction; Conviction not Against Manifest Weight of the Evidence**

{¶ 26} In her first assignment of error, Gardner contends that the evidence was insufficient to support the conviction. In her second assignment of error, she contends that the conviction was against the manifest weight of the evidence. We combine these assignments of error because they are interrelated.

{¶ 27} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law."

*State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at *id*. Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 28} A manifest weight challenge and a sufficiency of the evidence challenge are two distinct challenges to the evidence presented. *State v. Miree*, 8th Dist. Cuyahoga No. 110749, 2022-Ohio-3664, ¶ 30, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins* at *id*. Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Harris* at *id*., quoting *Wilson* at *id*., citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all the evidence in the record, the reasonable inferences drawn from it, and

the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *.'" *Harris* at *id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). The discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at 175.

{¶ 29} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id*. Manifest weight of the evidence is dispositive here.

{¶ 30} Gardner was convicted of felony murder under R.C. 2903.02(B), which provides in relevant part that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The underlying felony Gardner was convicted of was felonious assault under R.C. 2903.11(A)(1). That section provides in relevant part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."

{¶ 31} Gardner was convicted of the crimes as an aider and abettor to the two males who assaulted Craddock. R.C. 2923.03(A), governing complicity provides in relevant part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."

{¶ 32} To establish that a defendant aided and abetted a crime, the evidence must prove that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "Thus, the state must prove two criminal intents for the accomplice: first that the accomplice had the same criminal intent as the principal offender and, second, that the accomplice also intended to help the principal commit the offense." *State v. Middleton*, 6th Dist. Lucas No. L-05-1162, 2006-Ohio-6634, ¶ 14, citing *State v. Mendoza*, 137 Ohio App.3d 336, 343, 738 N.E.2d 822 (3d Dist.2000). In *Mendoza*, the Third District interpreted the terms "aid" and "abet" as requiring a showing that the defendant directed his or her conduct toward the goal of the principal's criminal offense. *Id.* at 344-345.

{¶ 33} This court has held that "[t]o be convicted as an aider and abettor such person must: (1) engage in an overt act 'with a view' towards producing the result for which he [or she] is held; and (2) such person must himself [or herself] possess the felonious intent that the principal possesses." *State v. Boigner*,

8th Dist. Cuyahoga No. 34514, 1976 Ohio App. LEXIS 7630, *3 (Mar. 25, 1976), citing *Woolweaver v. State*, 50 Ohio St. 277, 288, 34 N.E. 352 (1893). "It is not necessary that the accused be in a position to foresee the precise consequence of his [or her] conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his [or her] conduct." *State v. Losey*, 23 Ohio App.3d 93, 95-96, 491 N.E.2d 379 (10th Dist.1985).

{¶ 34} Ohio law is well-settled that, to convict an offender of complicity, the state need not establish the principal's identity. Rather, R.C. 2923.03(C) only requires that the state prove that a principal committed the offense. *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040 (1976), paragraph four of the syllabus, *vacated on other grounds, sub nom. Strodes v. Ohio*, 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978). Thus, conviction of the principal offender is not a prerequisite to finding a defendant guilty of complicity. *See* R.C. 2923.03(B) ("It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.").

{¶ 35} Gardner contends that "[t]his is a mere presence case, end of story." It is true that mere presence at the crime scene is insufficient to convict a defendant under a complicity theory. *State v. High*, 2018-Ohio-2236, 115 N.E.3d 702, ¶ 23 (8th Dist.). However, "'[p]articipation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed.'" *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981), quoting

*State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971); *High* at *id*. In other words, the evidence must establish that Gardner was more than a mere bystander.[1] Aiding and abetting may be shown by both direct and circumstantial evidence. *High* at *id*.

{¶ 36} There is nothing incredible about the jury's finding that Gardner was complicitous in the assault and murder of Craddock. Gardner's contention that all the evidence showed was that she was upset about her money being taken is belied by the record. Rather, the record demonstrates that, as the state maintains, Gardner "was at the center of the conflict from the start to finish."

{¶ 37} After Gardner confronted Craddock at Family Dollar and got her pouch of money back, she followed him to AutoZone where she confronted him again and assaulted him herself, albeit not to the extent that the two males did. She was overheard telling Craddock that "if I was a man I would do some real damage." Gardner was also seen talking on her cell phone and overheard "ranting" during the call about someone stealing her money.

{¶ 38} Shortly thereafter, the two males arrived and Gardner talked to them before all three of them went into the AutoZone where Craddock was. A witness in the store testified as to what could reasonably be construed as Gardner identifying Craddock to the two men. There was also witness testimony that the men referred to Gardner as "auntie," which further demonstrated that Gardner and the men knew

---

[1] The trial court here instructed the jury that "[t]he mere presence of the defendant at the scene of the offense is not sufficient to prove in and of itself the defendant was an aider or abettor."

each other.  Gardner remained on the scene while the two men beat Craddock and left with them when the beating was over.

{¶ 39} After her arrest, Gardner was recorded on jail calls saying that she was going to "sing like a bird" and it was going to be "a million dollars for both of them" if a particular individual did not help with her bond money.  A reasonable inference could be made from this evidence that Gardner knew who the assailants were.  A reasonable inference that Gardner possessed the intent of the assailants could be made from Gardner's statement on the calls that Craddock "caused his own s***, he took s*** from me."

{¶ 40} The evidence the state presented was compelling and was not lessened, as Gardner contends, by the lack of Gardner's DNA at the crime scene or forensic evidence from her phone showing who she was talking to when she was overheard complaining about her money being stolen.

{¶ 41} This is not the exceptional case where the jury lost its way.  Rather, the weight of the evidence supports the conviction.  Because the weight of the evidence supports the conviction, the evidence was necessarily sufficient.  The first and second assignments of error are therefore overruled.

**No Plain Error in Admission of Jail Calls**

{¶ 42} In her third assignment of error, Gardner contends that the probative value of the jail calls was outweighed by its prejudicial effect.  No objection to the calls was made at trial, and therefore we review for plain error.

{¶ 43} The failure to object to the admission of evidence at trial waives all but plain error on appeal. *See* Crim.R. 30(A); *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 15 (1st Dist.). "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To prevail on a claim that the trial court committed plain error, an appellant must demonstrate that an error constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial. *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 23.

{¶ 44} Trial courts have a duty "to determine whether testimony is relevant and to balance its potential probative value against the danger of unfair prejudice." *State v. Clark*, 8th Dist. Cuyahoga No. 95928, 2011-Ohio-4109, ¶ 32. Evid.R. 402 allows the admission of any relevant evidence so long as the probative value of that evidence is not outweighed by its prejudicial effect, and it does not confuse the issue or mislead the jury. Evid.R. 403(A).

{¶ 45} Statements made during jail calls can be deemed nonhearsay admissions by a party-opponent under Evid.R. 801(D)(2). *See, e.g., State v. Gerde*, 12th Dist. Clermont No. CA2016-11-077, 2017-Ohio-7464, ¶ 9. Under Evid.R. 801(D)(2), a statement is not hearsay if "[t]he statement is offered against a party and is * * * the party's own statement, in either an individual or a representative capacity[.]" Gardner contends that the statements made during the

calls did not fall under Evid.R. 801(D)(2) because she did not admit to the crime or intending to hurt Craddock during the calls.

{¶ 46} Although the term "admission" appears to imply that an out-of-court statement must be a confession or statement against interest, "'in actuality, any prior statement of a party is admissible providing it is offered against the party at trial.'" *State v. Baker*, 137 Ohio App.3d 628, 652, 739 N.E.2d 819 (12th Dist.2000), quoting Weissenberger's *Ohio Evidence* 367, Section 801.33 (1998). Thus, there was no requirement that Gardner had to make an admission during the calls for them to be admitted under Evid.R. 801(D)(2).

{¶ 47} The state offered the calls as evidence to refute Gardner's contention that she had no connection to the two men who beat Craddock. Gardner was recorded on the calls saying that if an individual did not help with her bail money she was going to "sing like a bird" and it would be "a million for both of them." These statements were properly admitted under Evid.R. 801(D)(2) — there was no error, plain or otherwise, in their admission. The third assignment of error is therefore overruled.

**No Ineffective Assistance of Counsel**

{¶ 48} For her final assignment of error, Gardner contends that she was denied the effective assistance of trial counsel. According to Gardner, "[h]ad [the] jail calls not been in evidence, the jury would not have come back with a guilty verdict on any of these counts." We disagree.

{¶ 49} To prevail on an ineffective assistance of counsel claim, Gardner must show that her trial counsel's performance fell below an objective standard of reasonableness, and that she was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, Gardner must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *Strickland* at 697.

{¶ 50} As discussed, the jail calls were properly admitted under Evid.R. 801(D)(2), but even if they had been excluded, the other evidence presented overwhelmingly supports the conviction. The outcome of the trial would not have been different without the calls. Thus, Gardner has failed on both prongs of an ineffective assistance of counsel claim. The fourth assignment of error is therefore overruled.

**Conclusion**

{¶ 51} The evidence was sufficient to support the conviction and the conviction was not against the manifest weight of the evidence — it demonstrated that Gardner was complicitous in the assault and murder of Craddock. Recordings of Gardner's jail calls were properly admitted under Evid.R. 801(D)(2), and trial counsel was not ineffective for failing to object to their admission.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
SEAN C. GALLAGHER, J., CONCUR